Stephen T. Janik, OSB #741538
Jack L. Orchard, OSB #721888
sjanik@balljanik.com
jorchard@balljanik.com
Ball Janik LLP
101 SW Main St., Ste. 1800
Portland, OR 97204-3219
(503) 228-2525
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation<br><br>Plaintiff,<br><br>v.<br><br><br><br>STATE OF OREGON, by and through THE OREGON DEPARTMENT OF STATE LANDS, +/- five acres of unimproved land/along the Willamette River near West Linn, Oregon,<br><br>Defendant. | Case No.: 3:22-cv-00533-sb<br><br><br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT FILED BY CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON |

1.  Background.

This case is a two-party condemnation action involving only Portland General Electric ("PGE") and the State of Oregon Department of State Lands ("DSL").

PGE has delegated power under the Federal Power Act, 16 U.S.C. §§791 et seq. (specifically § 814) (the "FPA"), through the delegated authority of the Federal Energy Regulatory Commission ("FERC") to condemn property necessary for the safe and efficient operation of the TW Sullivan Hydroelectric Station at Willamette Falls ("hydro facilities"). Intervenor does not appear to challenge that authority.[1]

DSL claims ownership, control and authority over real property defined in PGE's Complaint (the "Property") which is necessary for the operation of the hydro facilities to PGE in accordance with PGE's FERC-issued license. Specifically, DSL issued to proposed Intervenor a "Registration" on August 31, 2018 allowing a fishing platform structure on a rock area below the falls, which is in close proximity to not only the falls but also the dam spillway. PGE appealed the issuance of the Registration to the State Office of Administrative Hearings. That case, after extensive litigation, is being removed from the administrative docket with the concurrence of PGE, DSL and the Grand Ronde.

This condemnation case is limited to a condemnation of the State's claimed ownership of the Property. PGE does not seek to condemn any rights under the Registration (which rights expire on August 31, 2023) and whatever rights the Registration gives to the Grand Ronde over that portion of the Property in the area covered by the Registration. Grand Ronde asserts that PGE's only reason to file its condemnation action was to terminate the Registration. That is

---

[1] The United States Supreme Court in Penn East Pipeline Company, LLC v. New Jersey 141 S.Ct. 2244 (2021), has confirmed the authority delegated to a license of FERC to condemn state owned lands

1360228\v7

Page 2 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT FILED BY CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON

clearly incorrect because: (i) the Grand Ronde is not named as a defendant, (ii) the Property which is the subject of the action does not include the Registration and (iii) the Registration, itself, terminates by a fixed date.

Grand Ronde also asserts that the condemnation covers land on the Oregon City side of the Willamette River near the "Blue Heron" property acquired by Grand Ronde in 2019 and may impact land owned by Grand Ronde. Grand Ronde does not explain how condemning State claimed land could adversely affect the Blue Heron site. Grand Ronde states: "It is therefore unclear whether the Defendant Property includes the Blue Heron Property shoreline." There are several responses. First, since Grand Ronde is not a defendant in the condemnation case, the Registration is not being condemned. Second, the Grand Ronde does not explain what rights it has, if any, to the shoreline. Third, Mr. Patrick Gaylord, who prepared the metes and bounds description of the Property PGE needs to condemn, states in his Declaration that the condemned Property does not include any of the Grand Ronde's Blue Heron site. *Declaration of Patrick Gaylord ("Gaylord Decl.")*, ¶4.

PGE has elected to condemn the Property to secure the necessary pre-eminent control over these areas to assure public safety, uninterrupted, and consistent hydro facilities operation and conduct operation of certain automated equipment as is explained in the Declaration of Nicholas Loos of PGE and in the Declaration of Tim Shibahara. *Declaration of Nicholas Loos ("Loos Decl.")*, ¶¶5-7 ; *Declaration of Tim Shibahara ("Shibahara Decl.")*, ¶¶6-7. Such matters are conditions and requirements of PGE's FERC license. Ordering Paragraph (A) of the 2005 licensing order makes the "license . . . subject to the regulations the Commission issues under the provisions of the FPA." *Portland Gen. Elec. Co.*, 113 FERC ¶ 62,186, 64,597 at Ord. Para. (A) (2005); *see also* 16 U.S.C. § 803(c) (A project "shall conform to such rules and regulations as the

Commission may from time to time prescribe for the protection of life, health, and property."). Part 12 of the Commission's rules govern the safety of hydroelectric projects. *See generally* 18 C.F.R. pt. 12. Part 12 has a variety of safety-related mandates, the broadest of which is a duty to "use sound and prudent engineering practices in any action relating to the design, construction, operation, maintenance, use, repair, or modification of a water power project or project works." 18 C.F.R. § 12.5. E.G. Flambeau Hydro, LLC, 167 FERC § 62, 030 at P. 79 (2019). This rule is intended to "ensure the project maintains . . . safe operating conditions over the term of the license." PGE has attempted to negotiate an agreement through DSL which accomplishes those goals but has not been able to do so. This agreement would include terms for the exercise of any rights under the Registration issued by DSL.

Below the surface of the water cascading over the rock crescent of Willamette Falls is a dam that is operated by PGE. The alterations in the height of the dam can quickly alter the flow and quantity of water and debris going over the dam, putting those below the dam on areas of the Property at serious safety risk. The risks of the hydro facilities operation are described in greater detail in the Loos Declaration. In sum, PGE seeks to control those risks, while efficiently producing electricity. This cannot be accomplished if DSL is also making decisions as to what activities can occur on portions of the Property and on what terms, including those affecting PGE's operations.

PGE is not opposed to allowing traditional cultural practices, not only to Grand Ronde but, to the other four tribes that historically gathered at the Falls for fishing and harvesting lamprey. But public safety and hydroelectric power production need to be coordinated and safe. This can only occur if PGE controls the Property. The hydro facilities and necessary Property cannot have two masters. Under the FPA, and the FERC license, PGE must be in control.

1360228\v7

Page 4 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT FILED BY CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON

In recognition of tribal cultural practices at Willamette Falls, PGE has prepared a detailed Perpetual Cultural Practices Easement available to all five tribes and has submitted this to FERC for approval, as required by FERC for non-hydroelectric uses within the FERC licensed area. FERC approval is pending. The Perpetual Cultural Practices Easement is attached to the Loos Declaration as Attachment A. The easement balances the protection of the hydro facilities operations with a cooperative approach to tribal traditions and the need for safety.

2.  Grand Ronde's Position on Intervention.

Grand Ronde has not demonstrated that it holds "an interest relating to the property or transaction which is the subject of the action." Fed. R. Cir. P §24(a). Grand Ronde in its Motion at pages 3-9 provides a history of its fishing and lamprey harvesting, but nothing in this history establishes that Grand Ronde has a legally cognizable interest, other than the Registration, which is not being condemned. In *Bonnichsen v. U.S.*, 2004 WL 290287 (D. OR. 2004), Native American Tribes sought intervention in a case applying and interpreting the Native American Graves Protection and Repatriation Act. The tribes asserted that they "have a legally protectable interest in seeing that the remains and their burial site, items of great religious and cultural importance to the Tribes, are properly and respectfully studied, curated and returned to the Tribes pursuant to ARSA and its regulations." The Court denied the intervention because, in part, did not demonstrate "a legally cognizable interest" that would entitle them to participate as parties, i.e., holding a legal interest in the litigation.

In this case, the Grand Ronde has a cultural tradition of fishing and harvesting at the Falls. The physical extent of that interest is not (except for the 2023 expiring Registration) a legal interest. More significantly, the Grand Ronde has no interest independent from DSL's claimed ownership and control. The tribe's intervention filing is premised on its DSL-issued

Registration. It is derivative of DSL, as indicated by the Grand Ronde's acknowledgment that its fishing and harvesting activities, the placement of its platform and its access to the condemned property is all subject to DSL regulation and conditions.

Condemnation is a uniquely structured process. The plaintiff determines what property right is to be condemned and what legal right is to be taken. Furthermore it is, as set forth in FRCP 71.1, an in rem proceeding focused only on such property rights. In short, it is not a process where various claims can be asserted or litigated on matters outside the condemnation. Condemnation is a two issue proceeding – does the condemner have the authority to condemn the targeted property rights and what compensation is to be paid for the loss of the property right? In this instance, these issues are only between PGE and DSL. They are not the Grand Ronde's.

Another problem on the Grand Ronde's proposed intervention is what is accomplished by the Grand Ronde's participation as a full party in this case. Granting such status to the Grand Ronde would elevate the tribe to a position considerably beyond the tribe's non-existent legal interest in the condemned Property.

Allowing intervention by Grand Ronde as a party gives Grand Ronde the potential ability to raise their own issues which have been raised in its Motion and Answer. For example, on p. 15 of its Motion Grand Ronde asserts that it has "sovereign interests" without any indication of what those interests are or the legal basis for such an assertion. Second, at p. 4 of its Answer, Grand Ronde raises the issue of whether or not PGE's license requires or permits the condemnation. Third, on p. 6 of its Answer, Grand Ronde raises the issue of whether PGE's relicensing of the hydro facilities in 2005 required, under FERC's licensing rule, to identify the property as necessary for PGE's operations. Fourth, Grand Ronde raises the issue of whether or

not PGE's FERC license "requires" PGE to condemn the Property, as an Affirmative Defense. Fifth, in its third affirmative defense, Grand Ronde raises the issue of laches. Sixth, in its fifth affirmative defense, Grand Ronde raises the issue of whether the legal description is "vague and insufficient." Seventh, in its sixth affirmative defense Grand Ronde raises the issue of whether FERC has found a public safety risk. There is no basis in the FPA (U.S. Code § 814) to support these assertions.

Grand Ronde also asserts at p. 14 of its motion that its interests may not be represented by DSL. This is not supported by any facts. Further, all of Grand Ronde's Affirmative Defenses can be raised by DSL if it chooses to do so. Given DSL's history in responding to PGE and its assertion of control through the Registration's issuance, it is evident that DSL will advocate to support its control of the condemned Property which it has undertaken in the issuance of the Registration.

It is evident that the Grand Ronde seeks to make this two-issue in rem proceeding into a broader discussion of rights and claims absent from a condemnation case. The result to the actual parties to the condemnation will be attenuated litigation, the obvious potential for prolonged discovery and the Court being asked to adjudicate issues of the Grand Ronde's choosing such as concerns of culture and tradition. This condemnation proceeding is not the place to resolve these issues.

In this litigation, the Grand Ronde has no rights to which the tribe is legally entitled, except for the Registration which is not being condemned. Conversely, PGE's condemnation concerns only DSL's control and asserted pre-eminence over the condemned Property. Those are not Grand Ronde rights.

1360228\v7

Page 7 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT FILED BY CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON

Just as this is a two-issue case, it, too, is a two party case. What is at the core is DSL's rights. The Grand Ronde cannot speak for DSL. The Motion to Intervene should be denied.

Dated: June 10, 2022.

BALL JANIK LLP

s/ Stephen T. Janik
Stephen T. Janik, OSB #741538
Jack L. Orchard, OSB #721888
sjanik@balljanik.com
jorchard@balljanik.com
101 SW Main St., Ste. 1800
Portland, OR 97204-3219
(503) 228-2525
Attorneys for Plaintiff

1360228\v7

Page 8 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT FILED BY CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON