# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY, an Oregon Corporation**,<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF OREGON, by and through THE OREGON DEPARTMENT OF STATE LANDS; and FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON**,<br><br>Defendants,<br><br>and<br><br>**CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON, a federally recognized Indian tribe,**<br><br>Intervenor-Defendants, | Case No. 3:22-cv-533-SI<br><br>**OPINION AND ORDER** |

Stephen T. Janik and Jack L. Orchard, BALL JANIK LLP, 101 SW Main Street, Suite 1100, Portland, OR 97204. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Oregon Attorney General; and Nina R. Englander and Shaunee Vanessa Morgan, Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants.

Kimberly S. D'Aquila, TRIBAL ATTORNEY'S OFFICE, CONFEDERATED TRIBES OF GRAND RONDE, 9615 Grand Ronde Road, Grand Ronde, OR 97347; and Richard Roos-Collins, WATER AND POWER LAW GROUP PC, 2140 Shattuck Avenue, Suite 801, Berkeley, CA 94704. Of Attorneys for Intervenor-Defendant.

**Michael H. Simon, District Judge.**

PGE seeks condemnation under the Federal Power Act of certain state lands near PGE's hydroelectric generation facility at Willamette Falls between West Linn and Oregon City, Oregon. Before the Court is a motion to intervene filed by the Confederated Tribes of the Grand Ronde Community of Oregon (the Tribe). The Tribe contends that it is entitled to intervene as of right or, alternatively, should be allowed permissive intervention because resolution of PGE's claim may affect the Tribe's rights to conduct ceremonial fishing and lamprey harvesting on the property at issue. As explained below, the Court grants the Tribe's motion to intervene.

## STANDARDS

### A. Intervention of Right

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant may intervene as of right if the applicant "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)). Alternatively, Rule 24(a)(1) provides that a court must permit intervention of right to anyone who "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1).

If a proposed intervenor fails to meet any of these requirements, it cannot intervene as of right. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). In evaluating whether a proposed intervenor meets these requirements, courts "are guided primarily by practical and equitable considerations" and generally construe Rule 24 "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed

complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

## B. Permissive Intervention

Applicants for permissive intervention under Rule 24(b) must meet three threshold requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Even if an applicant satisfies these threshold requirements, a court still has discretion to deny permissive intervention. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising this discretion, a court "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.

## BACKGROUND

PGE seeks condemnation of certain State-owned lands along the banks of Moore's Island and Abernethy Island at Willamette Falls. *See* ECF 1-3. PGE contends that under the Federal Power Act, 16 U.S.C. §§ 791a *et seq*., it has the authority to condemn property that is necessary for the safe and efficient operation of PGE's hydroelectric generation facilities. The Tribe asserts several cultural and property ownership interests in the affected property.

In April 2016, the Oregon Fish and Wildlife Commission authorized the Tribe to harvest salmon and steelhead in a designated area at Willamette Falls for ceremonial purposes. The Oregon Department of State Lands (DSL) later approved a registration (Registration) for the Tribe to construct and operate a fishing platform within the designated area. In October 2018, the Tribe completed construction of the platform, which is located on the affected property. Also within that property is the east bank of the Willamette River, where the Tribe conducts its

lamprey harvests, an activity authorized and regulated by the Oregon Department of Fish and Wildlife. Additionally, abutting the affected property is the Tribe's Blue Heron property, which extends to the ordinary low water line of the channel between Abernethy Island and the mainland. In its motion to intervene, the Tribe argues that PGE's ownership of the affected property will threaten the Tribe's ability to continue ceremonial fishing practices of salmon, steelhead, and lamprey on the property and also may threaten the Tribe's ownership interest in the Blue Heron property.

## DISCUSSION

PGE does not dispute that the Tribe meets the first requirement of Rule 24(a)(2)—that the Tribe timely moved to intervene. PGE argues only that the Tribe may not intervene of right because: (1) the disposition of this action will not likely impair a significant protectable interest held by the Tribe (the second and third requirements); and (2) Defendant DSL will adequately represent the Tribe's interests (the fourth requirement). The Court discusses both arguments made by PGE in turn.

**A.  Likely Impairment of Significant Protectable Interest**

A proposed intervenor has a significant protectable interest if that interest is "protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F. 1173, 1179 (9th Cir. 2011) (quoting *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1484 (9th Cir. 1993)). The interest must be "direct" and "non-contingent." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981).

PGE argues that the Tribe has no protectable interest in this action because PGE is not seeking to "condemn" the Tribe's Registration. To establish intervention of right, however, the Tribe need not show that the Registration itself is the direct subject matter of the action. Rather, the Tribe's legal interest need only bear a direct "relationship" to the action. *See Wilderness*

*Soc.*, 630 F.3d at 1179. The Tribe's Registration, which authorizes the Tribe to conduct ceremonial fishing at a fishing platform on the defendant property, is a legal interest, and PGE acknowledges as much. *See* ECF 15, at 5 ("[T]he Grand Ronde has a cultural tradition of fishing and harvesting at the Falls. The physical extent of that interest is not (except for the 2023 expiring Registration) a legal interest.").

Further, that legal interest bears a direct relationship to the claims at issue. PGE seeks to condemn State property to facilitate PGE's hydroelectric operations at Willamette Falls. If PGE prevails, then PGE, and not the State, will hold the authority to renew the Tribe's Registration, which expires in August 2023. As the Tribe explains, the State "routinely renewed" the Tribe's Registration. *See* ECF 19, at 4 n.2. PGE, on the other hand, may not so freely grant the same permission to use its land, if it acquires that land. Additionally, because PGE seeks condemnation of all State-owned shore lands at Willamette Falls, this action may impede the Tribe's access to Willamette Falls for lamprey harvests. Thus, the Court finds that as a "practical matter," this action may substantially affect the Tribe's interest in continuing its fishing practices at Willamette Falls. *See Berg*, 268 F.3d at 817.

PGE contends that the interest the Tribe asserts here is analogous to the interest asserted in *Bonnichsen v. United States*, 2004 WL 2901287 (D. Or. Dec. 15, 2004). In *Bonnichsen*, the district court granted motion to intervene filed by several tribes for the purpose of allowing the tribes to appeal the court's interpretations of the Native American Graves Protection and Repatriation Act (NAGPRA). *Id.* at *1. After the Ninth Circuit affirmed the district court's interpretation of the statute, the plaintiffs moved to dismiss the tribes as intervenors. The district court declined formally to dismiss the tribes as intervenors because the case had closed and there was nothing left for the court's involvement. On that basis, the Court concluded that the tribes no

longer had a "legally cognizable interest" in the action. *Id.* at *2. The Court did not conclude, as PGE contends, that any interest in protecting Native American remains and burial sites under the NAGPRA is not a protectable interest under Rule 24(a). Because this case is only at its initial stages, *Bonnichsen* does not answer the question before the Court.

As for the Blue Heron property, the Court does not find that this action may impair the Tribe's ownership interest in that property. PGE did not name the Tribe as a defendant and identified the Tribe's property line along the Blue Heron property as the outer boundary for the property at issue. *See* ECF 1-3, at 2. Additionally, the individual whom PGE hired to conduct the metes and bounds assessment of the affected property submitted a declaration in response to the Tribe's motion expressly disavowing any intention to include Tribe-owned property in this condemnation action. *See* ECF 17 ("The purpose of this reference to the above-described Deed was to exclude from the area being condemned any portion of the land owned by the Confederated Tribes of Grand Ronde.").

The Tribe argues that the diagram attached as Exhibit B to the Complaint includes the land above the low-water line within the Blue Heron property, and thus, PGE may be seeking condemnation of the Tribe's property. Based on PGE's legal description of the affected property (also attached as Exhibit B to the Complaint), PGE's decision not to name the Tribe as a defendant, and PGE's express disavowal of any intention to condemn any part of the Blue Heron property, the Court finds that the Blue Heron property is not an interest that may be affected by this lawsuit.

**B. Adequate Representation**

In determining whether existing parties will adequately represent the interests of proposed intervenors, a court considers:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086. "The burden on proposed intervenors in showing inadequate representation is minimal and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

PGE contends that Defendant DSL will adequately represent the Tribe's interests because DSL is *able* to raise all the defenses that the Tribe raised in its proposed answer to the complaint. PGE has not shown, however, that the interests of DSL are completely aligned with those of the Tribe such that DSL will "undoubtedly" make those arguments and that it is willing to make such arguments. *See Arakaki*, 324 F.3d at 1086. Indeed, to the contrary, DSL's answer indicates that it is not willing to make the arguments that the Tribe raises. The Tribe represents that it sent its proposed answer to DSL several weeks before DSL filed its answer, and DSL chose not to assert the Tribe's affirmative defenses. *See* ECF 7-3 (the Tribe's proposed affirmative defenses); ECF 14 (DSL's affirmative defenses).

Further, the Tribe's distinct private interests favor intervention. The Tribe seeks to protect its ceremonial fishing practices, whereas DSL advances broader public interests held by the State. DSL therefore may not adequately represent the Tribe's private interests. *See Berg*, 268 F.3d at 823 (concluding that a federal agency would not adequately protect the private interests of proposed intervenors); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (concluding that a state agency's representation of private party's interests "may have been inadequate" because the private party's interests

"were potentially more narrow and parochial than the interests of the public at large"); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (concluding that a federal agency did not adequately represent "the more narrow, parochial interests" of the proposed intervenors), *abrogated on other grounds*, *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *see also* Wright & Miller, *Federal Practice and Procedure*, § 1909 ("[T]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties.").

In summary, the Tribe meets all four requirements for intervention of right. *See W. Watersheds Project*, 22 F.4th at 835. Because the Court finds the Tribe may intervene as of right, the Court need not resolve the Tribe's arguments related to permissive intervention.

## CONCLUSION

The Court GRANTS the Tribe's motion to intervene (ECF 7).

**IT IS SO ORDERED**.

DATED this 7th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge