**Kimberly D'Aquila, OSB #962557**
kim.daquila@grandronde.org
Tribal Attorney's Office
Confederated Tribes of Grand Ronde
9615 Grand Ronde Road
Grand Ronde, Oregon 97347
503/879-4664

**Richard Roos-Collins** (Cal. Bar #123231) (*admitted pro hac vice*)
rrcollins@waterpowerlaw.com
Water and Power Law Group PC
2140 Shattuck Avenue, Suite 801
Berkeley, California 94704
510/296-5589

Attorneys for Intervenor-Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF OREGON, by and through THE OREGON DEPARTMENT OF STATE LANDS, and +/- FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON,<br><br>    Defendants,<br><br>    and | Case No.: 3:22-CV-00533-SI<br><br>**MEMORANDUM IN OPPOSITION TO CONFEDERATED TRIBES OF SILETZ INDIANS' MOTION TO INTERVENE AS PLAINTIFF** |

| CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON, a federally-recognized Indian tribe, |   |
|---|---|
| Intervenor-Defendant. |   |

The Confederated Tribes of Siletz Indians ("Siletz") is not in the same legal posture as the Confederated Tribes of the Grand Ronde Community of Oregon ("Grand Ronde") and is not entitled to intervention in this matter.  Unlike Grand Ronde, Siletz does not seek intervention in order to safeguard an existing "protectable interest" in the property subject to this lawsuit ("Property").  Rather, Siletz's purpose is to support condemnation of the Property by Portland General Electric Company ("PGE") because Siletz objects to Grand Ronde's state-issued Registration and because, if PGE is successful, Siletz might be able to obtain a perpetual cultural practices easement ("Cultural Easement") on the Property from PGE.

There are several grounds on which to deny Siletz's Motion to Intervene.  First, disposition of this case will not, as a practical matter, impair Siletz's proffered "protectable interests."  Siletz does not have a legal right to a Cultural Easement from PGE and Siletz's asserted federal rights to harvest fish would be no more subservient to state law than they are currently if PGE's condemnation is not successful.  Second, Siletz fails to explain why its interests may not be adequately represented by PGE, particularly given Siletz's claim that PGE brought this action to facilitate the exercise of cultural harvest rights by Siletz and other tribes within the Property.  Third, Siletz has not complied with the pleading requirement of Fed. R. Civ. P. 24(c), which applies to motions to intervene as of right and permissively.  Siletz's motion was not accompanied by a pleading setting out the claims for which intervention is sought.  In this case, the absence of a pleading that articulates Siletz's claims is significant because Siletz

has not expressly adopted the claims in PGE's complaint, nor does it have standing to do so. It is therefore unclear what claims Siletz plans to assert. Finally, if the Court were to allow Siletz to intervene, there would be no reason to deny intervention to any other tribe who wants to obtain a Cultural Easement from PGE, absent an untimely request to do so.

**A.       Intervention as of right.**

A movant seeking intervention as of right must satisfy four criteria under Fed. R. Civ. P. 24(a): (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Failure to satisfy any one of these requirements is fatal to the motion to intervene. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Siletz's motion fails to satisfy at least two of the four requirements. Specifically, the motion does not establish potential impairment of Siletz's asserted protectable interests or that Siletz's interests may not be adequately represented by the existing parties.

   *1.       Siletz's protectable interests will not be impaired.*

Unlike Grand Ronde, Siletz does not assert a protectable interest in the Property arising from a state-issued waterway structure registration or a ceremonial fishing rule. Siletz's motion asserts a protectable interest in the Property based primarily on alleged federal rights to harvest fish in an around Willamette Falls that Siletz claims it retained as a political and legal successor, along with Grand Ronde, to the Treaty with the Kalapuya, Etc., 1855, Jan. 22, 1855, 10 Stat.

1143, 1855 WL 10428 (commonly known as the "Willamette Valley Treaty").[1] Siletz motion at 5-8. Grand Ronde does not agree that Siletz is a legal or political successor to the Willamette Valley Treaty[2] or that Siletz currently possesses a treaty right to harvest fish at Willamette Falls. However, this condemnation action is not the place to resolve that disagreement and Grand Ronde is not attempting to do so here. Assuming for purposes of this proceeding only that Siletz's claimed, but admittedly un-adjudicated, treaty right to harvest fish constitutes a significant protectable interest in the Property, Siletz's motion fails to establish that interest may be impaired by the disposition of this condemnation action.

Two areas of claimed impairment are set forth in the motion. First, Siletz asserts that if condemnation is not successful, Siletz's rights in its "cultural exercise within the Property" will be impaired because they will, in part, "only be subject to exercise under State authority and regulation." Siletz motion at 4. Second, Siletz asserts that it plans to take advantage of the Cultural Easement drafted by PGE to "ensure perpetual access to exercise its cultural rights in and around Willamette Falls" and that if it is unable to do so, part of its cultural harvest area will be impaired. Siletz motion at 10. Neither claim has merit.

---

[1] Siletz's motion also cites its participation in certain groups addressing river cleanup and salmon predation as protectable interests in the Property. Siletz Motion at 8-9. However, because Siletz does not claim these interests may be impaired by the outcome of this action, Grand Ronde does not address them here.

[2] The United States understood its obligations under the Willamette Valley Treaty were exclusive to the Kalapuya and others removed to the Grand Ronde Reservation. The Treaty provided for annuity payments to be distributed over a twenty-year period to "promote their well-being, and advance them in civilization." Willamette Valley Treaty, 1855 WL 10428, Article 2. All the annuities were paid at Grand Ronde. No Indians on the Oregon Coast Reservation – including the Siletz Tribe and its members – received Willamette Valley Treaty annuities.

To begin with, PGE has operated its hydroelectric project at Willamette Falls for more than 100 years without seeking to condemn the Property. Siletz does not explain how failing to condemn the Property now would make its cultural harvest rights subject to exercise only under State authority and regulation. It would not. To the extent Siletz has a treaty secured right to harvest fish at Willamette Falls, that right cannot be qualified by the State of Oregon regardless of whether the exercise of the right is on public or private land.

Courts have long held that tribal fishing rights arising from a treaty with the United States are preserved and protected under the supreme law of the land and may not be qualified by state action. *See*, *e.g.*, *Puyallup Tribe v. Dept. of Game of Wash.*, 391 U.S. 392, 398 (1968) ("The right to fish 'at all usual and accustomed' places may, of course, not be qualified by the State…."); *United States v. Washington*, 384 F. Supp. 312, 402 (W.D. Wash. 1974) ("Because the right of each treaty tribe to take anadromous fish arises from a treaty with the United States, that right is reserved and protected under the supreme law of the land . . . and may not be qualified by any action of the state."), *aff'd and rem'd*, 520 F.2d 676 (9th Cir. 1975). Further, a treaty right to take fish at "usual and accustomed places," is independent of any land ownership. *See United States v. Washington*, 157 F.3d 630, 646 (9th Cir. 1998) (tribes with treaty secured right to fish from usual and accustomed grounds acquired right to take shellfish from tidelands regardless of the public or private nature of their ownership); *United States v. Winans*, 198 U.S. 371, 381 (1905) (a treaty right to take fish at all usual and accustomed places secures for the tribe the means of its exercise by giving the tribe "a right in the land, -the right of crossing it to the river,- the right to occupy it to the extent and for the purpose mentioned."). It therefore follows that to the extent Siletz possesses treaty secured rights to harvest fish at Willamette Falls, the

rights are not subject to exercise or regulation under state authority, regardless of who owns the land.

Next, Siletz's protectable interests in the Property do not include the right to a Cultural Easement. PGE has no current legal obligation or ability to grant Siletz a Cultural Easement on the Property and Siletz has no legal right to demand one. To constitute a "significant protectable interest" for purposes of intervention, the interest must be protectable under some law. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Because Siletz has no legal entitlement to a Cultural Easement, the easement does not provide a basis for intervention in this proceeding. In any case, Siletz has not demonstrated that the exercise of its cultural harvest rights will be impaired if it is unable to obtain a Cultural Easement from PGE. Siletz does not need an easement from PGE to exercise its cultural harvest rights at Willamette Falls. If Siletz currently has legal rights to harvest fish at Willamette Falls, it may continue to exercise those rights from state-owned land (i.e., public land) at the Falls. If, on the other hand, Siletz does not have legal rights to harvest fish, it cannot acquire those rights by entering into a Cultural Easement with PGE. An easement grants access to land, not the right to take fish. In other words, if Siletz cannot now legally fish at Willamette Falls, an easement granting access to private property to harvest fish will not change that.[3]

Finally, condemnation does not guarantee that Siletz may acquire a Cultural Easement on the Property on any terms, let alone on terms that will "ensure perpetual access" to exercise cultural harvests at Willamette Falls. Not only can PGE change its mind about a Cultural Easement, but as Siletz has already acknowledged, any easement provided by PGE is contingent

---

[3] For that matter, if Siletz does not have an existing legal right to fish at Willamette Falls, it does not have a protectable interest in this action.

on approval by the Federal Energy Regulatory Commission. Siletz motion at 5. At best, Siletz has only a prospective contingent opportunity to a Cultural Easement on the Property.

Because the disposition of this action will not, as a practical matter, impair or impede Siletz's ability to protect its asserted cultural harvest rights at Willamette Falls, intervention should be denied.

> 2. ***Siletz has not shown that its interests may not be adequately represented by PGE.***

Siletz has not met its burden of showing inadequacy of representation by PGE. While the burden of demonstrating inadequacy of representation is minimal, it is "not without teeth." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). Siletz asserts only that PGE "has much broader interests connected with its operation" that may or may not align with Siletz's interest. Siletz motion at 10. Merely pointing out that PGE has interests in its operation that are not shared by Siletz does not explain why PGE does not adequately represent Siletz's interests in this action.

In evaluating adequacy of representation, courts consider three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Citizens for Balanced Use v. Mont. Wilderness Ass'n.*, 647 F.3d 893, 898 (9th Cir. 2011). Here, PGE and Siletz both seek to ensure PGE's ownership of the Property through condemnation. There is no indication that Siletz's arguments in support or defense of condemnation would somehow be different because PGE has "broader interests" connected with its operations. The authority to condemn is entirely statutory. As the condemning party, PGE is in the best position to provide facts to advance the arguments for condemnation and it will undoubtedly make all relevant arguments Siletz might make in support of condemnation. Siletz

has offered no evidence to show that PGE is unwilling or incapable of making such arguments, nor has Siletz explained what "necessary elements" it would offer in this proceeding that PGE would neglect. Rather, Siletz adopts the statement of facts in PGE's complaint and offers no pleading of its own to differentiate it from PGE.

Further, when an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *Perry*, 587 F.3d at 951. The presumption may only be rebutted by a compelling showing to the contrary. *Id.* Siletz and PGE share the same ultimate objective in this proceeding – i.e., securing PGE ownership of the Property. Siletz's motion fails to make the necessary showing to rebut the presumption of adequate representation. The motion does not explain how PGE's "broader interests" in its operation may impact PGE's prosecution of this case in a way that may not align with Siletz's interests. Just the opposite – the motion indicates that PGE's and Siletz's interests are, in fact, aligned. The motion states that "[c]onfirming PGE's ownership of the Property will enhance and facilitate the Siletz Tribe's exercise of its rights in an around Willamette Falls … ." Siletz motion at 2. It further provides that "PGE has brought the present action to facilitate the exercise of cultural harvest and other cultural practices by all interested tribes within the Property" by offering a cultural practices easement to interested tribes including Siletz. Siletz motion at 5. Siletz plans to take advantage of the cultural practices easement drafted by PGE to ensure perpetual access to exercise its cultural rights in and around Willamette Falls. Siletz motion at 10.

Siletz should be denied intervention of right because it has not shown that its interests may be inadequately represented by PGE.

### B. Permissive intervention.

Siletz asserts that permissive intervention is justified because its "claims present questions of fact and law that overlap with and support the primary condemnation action." Siletz motion at 4. However, it is not clear what those claims are. Siletz did not submit a proposed pleading as required by Fed. R. Civ. P. 24(c) which provides "A motion to intervene must ... be accompanied by a pleading that sets out the claim or defense for which intervention is sought." While Siletz's motion states that it adopts the "statement of facts in [PGE's] Complaint," Siletz did not expressly adopt PGE's claims as its own. Siletz motion at 2. In any case, Siletz has no standing to assert PGE's claims for condemnation. The only claim set forth in Siletz's motion is a potential Fed. R. Civ. P. 19 defense that Siletz intends to raise if Grand Ronde attempts to "expand the scope of this proceeding into a determination of legal rights of all interested tribes to engage in cultural harvest at Willamette Falls." Siletz motion at 4. The claim is a red herring. It has nothing in common with the questions of law or fact in the primary action, and neither Grand Ronde's motion to intervene nor its answer challenge or seek a determination regarding the legal rights of any tribes at Willamette Falls.

This proceeding turns on the issue of whether condemnation of the Property is necessary for PGE's license compliance. Condemnation under the Federal Power Act cannot be properly sought to provide benefits to a non-licensee. Yet Siletz seeks to intervene to advocate for that very outcome. *See* Siletz motion at 3 ("If condemnation is not granted confirming PGE's ownership of the Property, the Siletz Tribe may be forced to subsume its federally-protected and inherent sovereign cultural harvest rights at Willamette Falls to State authority by having to seek its own State registration to engage in cultural fishing and other activities."). Siletz's assertions

regarding its harvest rights are wholly irrelevant to whether condemnation of the Property is necessary for PGE's license compliance.

Further, while Fed. R. Civ. P. 24(b) provides that a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law, the court has considerable discretion to deny intervention. *Donnelly*, 159 F.3d at 412. Among other things a court should consider when exercising this discretion, is whether the interests of the proposed intervenor are adequately represented in the proceedings already, *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), and whether the party seeking intervention "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented," *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). As explained above, Siletz's interests are already adequately represented by PGE. There is also no reason to believe Siletz will significantly contribute to the development of facts and legal issues in this case. Siletz's motion states that it did not plan to intervene in this proceeding until Grand Ronde successfully intervened, Siletz motion at 4, and that Siletz's intervention is to "protect the interests of tribes that support PGE's condemnation action." Siletz motion at 7.

Finally, if Siletz is granted permissive intervention, there would be no principled basis for denying intervention, absent an untimely motion, to any other tribe who asserts rights to engage in cultural harvests at Willamette Falls and seeks to support PGE's condemnation.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## CONCLUSION

For all of the foregoing reasons, Grand Ronde respectfully requests that the Court deny Siletz's Motion to Intervene in its entirety.

RESPECTFULLY SUBMITTED this 29th day of August, 2022.

Attorneys for Intervenor-Defendant:

_____
Kimberly D'Aquila, OSB #962557
Richard Roos-Collins (Cal. Bar #123231)
*Admitted pro hac vice*