IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY**, an Oregon Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**STATE OF OREGON,** by and through **THE OREGON DEPARTMENT OF STATE LANDS;** and **FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON**,<br><br>　　　　Defendants,<br><br>　　and<br><br>**CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON**, a federally recognized Indian tribe,<br><br>　　　　Intervenor-Defendant. | Case No. 3:22-cv-533-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

In this lawsuit, Portland General Electric (PGE) seeks condemnation under the Federal Power Act of five acres of state land in and around the base of Willamette Falls between West Linn and Oregon City. This land is near PGE's hydroelectric generation facility. PGE filed this

PAGE 1 – ORDER

eminent domain action to clarify ownership of the land and PGE's right properly to maintain and operate its hydroelectric power generation facility. The Confederated Tribes of the Grand Ronde Community of Oregon (Grand Ronde), a federally recognized Indian tribe, promptly sought leave to intervene as a defendant, which the Court granted. Now before the Court is a motion to intervene as a plaintiff filed by the Confederated Tribes of Siletz Indians (Siletz), a federally recognized Indian tribe. Siletz contends that it can intervene as of right, or alternatively that it should be granted permissive intervention.

Under Rule 24 of the Federal Rules of Civil Procedure, an applicant may intervene as of right if the applicant "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). As to the third element of impairment, the Ninth Circuit has followed the guidance of the Rule 24 advisory committee notes stating that intervention as of right should be granted when "an absentee would be substantially affected in a practical sense by the determination made in an action." *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes).[1]

If a proposed intervenor fails to meet any of these requirements, it cannot intervene as of right. *Arakaki v. Cayetano*, 324 F.3d at 1083. In evaluating whether a proposed intervenor meets these requirements, courts "are guided primarily by practical and equitable considerations" and

---

[1] For examples of practical impairment sufficient for intervention in the Ninth Circuit, *see Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441-42 (9th Cir. 2006) (finding impairment when applicants contended that "they will be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses" depending on the disposition of the action); *Arakaki v. Cayetano*, 342 F.3d 1078, 1086 (9th Cir. 2003) (finding impairment when the applicants' "continued receipt of benefits will cease").

PAGE 2 – ORDER

generally construe Rule 24 "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

As Grand Ronde points out, Siletz did not file a proposed complaint in intervention. Siletz asserts no claim on its own behalf, however; it simply wants to support PGE's position in this lawsuit. Thus, Siletz need not file its own complaint, despite the requirement in Rule 24. *See State of Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 847 (9th Cir. 2003) ("Contrary to the Secretary's view, no separate pleading was required, as both [proposed intervenor] and the state sought the same result . . . ." (gathering cases and citing 7C Wright, Miller & Kane, § 1914 (emphasis added in *Thompson*) ("If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical *in its allegations* with one that is already in the file.")).

Siletz argues that its protectable interest in exercising its right to cultural harvest and fish at Willamette Falls comes from the tribe's status as a political and legal successor to an 1855 treaty with the United States government. For the purposes of this motion, Grand Ronde does not contest that Siletz has this significant protectable interest in the property at issue.[2] Rather, Grand Ronde responds that even if Siletz has a significant protectable interest, its interest would not be impaired by the disposition of this lawsuit. Grand Ronde offers two alternative reasons.

---

[2] Grand Ronde does dispute, however, whether Siletz is a legal or political successor in interest to the Treaty with the Kalapuya, etc., 1855, Jan. 22, 1855, 10 Stat. 1143, 1855 WL 10428 (often called the "Willamette Valley Treaty"). That said, Grand Ronde does not contend that resolution of the pending motion depends on this disputed fact or that resolving that dispute is appropriate or necessary to resolve the pending motion.

PAGE 3 – ORDER

First, Grand Ronde argues that although Siletz contends that its protectable interest stems from treaty rights, Siletz focuses its motion to intervene on the impairment of the opportunity to receive from PGE a Permanent Cultural Practices Easement (PCPE), which Grand Ronde argues is insufficient to support intervention. Siletz has been working with PGE to develop this easement, and PGE has offered the PCPE to Siletz, assuming the easement is approved by the Federal Energy Regulatory Commission (FERC). ECF 23-1 at 2 (Kentta Decl. ¶ 4). According to Siletz, this PCPE would provide Siletz with perpetual access to Willamette Falls for fishing and cultural harvesting. Siletz argues that intervening in this action is necessary to protect Siletz's ability to engage in cultural practices and fishing on the contested property.

As Grand Ronde correctly points out, however, the outcome of this litigation will not determine whether PGE grants the PCPE to Siletz. Even if PGE succeeds in this condemnation action, Siletz will not necessarily receive a PCPE for fishing and cultural harvesting at Willamette Falls. PGE's granting of this easement is subject to both PGE's discretion and final approval by FERC. PGE may change its position, or FERC may reject the easement. If PGE is unsuccessful in this condemnation action, it is true that Siletz will not be able to receive a PCPE to engage in fishing or cultural harvest at Willamette Falls from PGE—but as Grand Ronde observes, Siletz has not needed or required an easement to do so for the past 100 years. Because Siletz fails to show that the easement is required to exercise its significant protectable interest on the contested property and fails to show that this litigation is determinative of Siletz receiving the PCPE, being denied intervention will not practically impair Siletz's interest.

Second, Grand Ronde argues that Siletz's significant protectable interest will not be impaired if Siletz does not intervene because the source of Siletz's tribal fishing right, a treaty with the United States, cannot be qualified by state action. *See Puyallup Tribe v. Dep't of Game of Wash.*, 391 U.S. 392, 398 (1968). Siletz does not contest this. Rather, Siletz asserts that the

PAGE 4 – ORDER

outcome of this litigation will affect whether Siletz must engage with federal, state, local, or other authorities to determine when and how to exercise those treaty rights. Siletz maintains that it is not bound by the State of Oregon's restrictions on lamprey harvest, but that the tribe voluntarily complies with the State's regulations "for now." ECF 23-1 at 2 (Kentta Decl. ¶ 3). The denial of its motion to intervene would impair Siletz's interest, Siletz argues, because should PGE fail to condemn the property in and around Willamette Falls, Siletz might need to deal with additional "red tape" or if it decides no longer to comply voluntarily with the State's regulations, it might need to litigate to exercise its treaty rights.

Administrative hurdles or even the need to litigate, however, are not practical impairments sufficient to support intervention as of right. The "mere inconvenience" of filing a separate lawsuit "is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977); *see also Silver v. Babbitt*, 68 F.3d 481, at *2 (9th Cir. Oct. 10, 1995) (mem.) ("[I]f an applicant intervenor's legal rights may be protected in a future lawsuit to compensate for damages sustained as a result of a court's injunction, intervention may properly be denied."); *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993) (affirming the district court's denial of an Indian tribe's motion to intervene as of right where allowing intervention "would only further confuse the issues and postpone what may be inevitable: a direct challenge to the allocation of treaty fishing rights" through litigation).

In the Ninth Circuit, an intervention applicant cannot show that its significantly protectable interest in the outcome of a legal action would be practically impaired when that applicant has other ways to redress its concerns. *Cal. ex rel. Lockyer*, 450 F.3d at 442 ("Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have other means to protect them." (emphasis in original) (quotation marks omitted)); *see also Ctr. for Biological Diversity v. Jewell*, 2013 WL 4127790, at *3 (N.D. Cal. Aug. 9, 2013)

(denying intervention when the proposed intervenor "could bring a separate lawsuit" to vindicate its rights) (citing *Lockyer*). Even if PGE fails to condemn the property at issue, Siletz retains an alternative, if not superior, means through which it can protect its interest. Because Siletz fails to show its protectable interests will be impaired, the Court declines to address Grand Ronde's arguments relating to the other factors for intervention as a matter of right. The Court denies Siletz's motion to intervene as of right.

Siletz also moves for permissive intervention under Rule 24 of the Federal Rules of Civil Procedure. Under Rule 24(b) the Court may permit anyone to intervene who is either given a conditional right to intervene by federal statute or has a claim or defense that shares a common question of law or fact with the main action, so long as this intervention is timely and will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b).

Siletz does not identify a claim of PGE's for which Siletz seeks to intervene. Nor does Siletz identify any specific questions of law and fact relevant to PGE's claim that Siletz asserts overlap with its own claim. In its argument for permissive intervention, Siletz only makes two conclusory statements: that it has claims of fact and law in common with PGE's claims and defenses and that its intervention will not unduly delay or prejudice the adjudication. Siletz does not reply to any of the arguments in opposition that Grand Ronde makes in response to Siletz's motion to intervene, thereby abandoning its cursory and unsupported argument that permissive intervention is appropriate in this case. The Court denies Siletz's motion for permissive intervention.

The Court, however, finds instructive a case cited by Siletz in its reply, *United States v. Metropolitan St. Louis Sewer District*, 569 F.3d 829 (8th Cir. 2009). In that case, the Eighth Circuit stated:

> The purpose of intervention is to promote the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to protect their interests or vindicate their rights, to join an ongoing lawsuit instead. Judicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit.
>
> * * *
>
> MIEC has other avenues to express its concerns about rate increases and changes to the permit system that the District may propose as a result of this enforcement action. . . . MIEC could also seek to participate as *amicus curiae* to inform the district court about its concerns.

*Id.* at 840-41.

As with the proposed intervenor in *Metropolitan St. Louis Sewer District*, Siletz would not otherwise need to bring a lawsuit on its own to vindicate rights in this lawsuit because it is not asserting any claim against any party. Siletz merely wants to support PGE's condemnation claim. Siletz's participation in this case to express its concerns about the legal dispute between PGE and the State of Oregon is more appropriately presented *amicus curiae* rather than as a plaintiff-intervenor. Thus, the Court *sua sponte* grants Siletz leave to appear *amicus curiae*.

The Court DENIES Siletz's motion to intervene, ECF 23, but grants Siletz leave to appear *amicus curiae*.

**IT IS SO ORDERED**.

DATED this 7th day of December, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 7 – ORDER