**Erick J. Haynie**, OSB No. 982482
EHaynie@perkinscoie.com
**Christopher W. Rich**, OSB No. 990954
CRich@perkinscoie.com
**Megan K. Houlihan**, OSB No. 161273
MHoulihan@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile:  +1.503.727.2222

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY**, an Oregon corporation;<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF OREGON**, by and through **THE OREGON DEPARTMENT OF STATE LANDS** and +/- **FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON**;<br><br>Defendants,<br><br>and<br><br>**CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON**, a federally-recognized Indian tribe,<br><br>Intervenor-Defendant. | Case No. 3:22-cv-00533-SI<br><br>**PORTLAND GENERAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>ORAL ARGUMENT REQUESTED |

MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

# TABLE OF CONTENTS

Page

LR 7-1 CERTIFICATION ................................................................................ 1

LR 7-2 CERTIFICATION ................................................................................ 1

MOTION ........................................................................................................... 1

MEMORANDUM OF LAW ............................................................................. 2

I.     INTRODUCTION ................................................................................. 2

II.    FACTUAL BACKGROUND ................................................................ 7

       A.     The Parties. ............................................................................... 7

       B.     The Sullivan Plant. ................................................................... 8

       C.     FERC Ownership Mandate. ...................................................... 8

       D.     The Condemnation Property. .................................................. 10

       E.     Public Safety and Operational Concerns. .............................. 10

       F.     Procedural History Surrounding Condemnation Property and PGE's
              Decision to Condemn under the Federal Power Act. ............. 13

       G.     PGE's future intentions. ......................................................... 16

III.   LEGAL STANDARDS ....................................................................... 17

       A.     Summary judgment standard. ................................................. 17

       B.     Federal Power Act Standards. ................................................ 17

              1.     Condemnation Authority Under § 21 of the Federal Power Act. ........... 17

              2.     Standard of Review. ..................................................... 20

IV.    ARGUMENT ....................................................................................... 21

       A.     There can be no reasonable dispute that PGE has condemnation authority
              under the Federal Power Act. .................................................. 21

       B.     The State does not dispute PGE's condemnation claim. ........ 22

       C.     The Grand Ronde's affirmative defenses each fail, as a matter of law. ............. 23

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

062187.0028\163516373.21

**TABLE OF CONTENTS (continued)**

|  |  | **Page** |
|---|---|---|
| 1. | Grand Ronde's "bad faith" defense fails as a matter of law. | 23 |
| 2. | Grand Ronde's "latches" defense fails as a matter of law. | 25 |
| 3. | Grand Ronde's "lack of necessity" defense fails as a matter of law. | 26 |
| 4. | The Grand Ronde's "exhaustion" defenses each fail, as a matter of law. | 26 |
| V. | CONCLUSION | 27 |

062187.0028\163516373.21

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ampersand Cranberry Lake Hydro, LLC*,
179 FERC ¶ 61,037 (2022) ............................................................................22

*Batiz v. Am. Commercial Sec. Servs.*,
776 F. Supp. 2d 1087 (C.D. Cal. 2011) ...........................................................17

*Chapman v. Public Utility District No. 1 of Douglas County*,
367 F.2d 163 (9th Cir. 1966) ...........................................................6, 20, 24, 26

*Fed. Power Comm'n v. Tuscarora Indian Nation*,
362 U.S. 99 (1960).............................................................................................18

*Field TurfBuilders, LLC v. FieldTurf USA, Inc.*,
No. 03:09-CV-671-HZ, 2011 WL 4903215 (D. Or. Oct. 14, 2011)....................17

*Flambeau Hydro, L.L.C.*,
113 FERC ¶ 61,236 (2005) ...............................................................................19

*Ga. Power Co. v. 54.20 Acres of Land*,
563 F.2d 1178 (5th Cir. 1977), *overruled on other grounds*, *Ga. Power Co. v.*
*138.30 Acres*, 617 F.2d 1112 (5th Cir. 1980) ...................................................18

*PacifiCorp*,
80 FERC ¶ 61,334 (1997) ...............................................................................19

*Pub. Util. Dist. No. 1 of Chelan Cnty., Wash.*,
15 FERC ¶ 62,168 (1981) ...............................................................................19

*Rivers Electric Co. v. 4.6 Acres of Land*,
731 F. Supp. 83 (N.D.N.Y. 1990) .....................................................................20

*Sac. Mun. Util. Dist.*,
178 FERC ¶ 61,112 (2022) ...............................................................................27

*S. Pac. Land Co. v. United States*,
367 F.2d 161 (9th Cir. 1966) ............................................................................20

*Tuscarora Nation of Indians v. Power Auth. of the State of N.Y.*,
257 F.2d 885 (2d Cir. 1958), *rev'd on other grounds sub nom. Fed. Power*
*Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960) .................................18

*U.S. v. Cruz*,
669 F. App'x 883 (9th Cir. 2016) ......................................................................16

iii-    TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

# TABLE OF AUTHORITIES (continued)

Page(s)

*United States v. 0.35 of Acre of Land*,
706 F. Supp. 1064 (S.D.N.Y 1988)................................................................20, 21

*United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par.,
State of La.*,
616 F.2d 762 (5th Cir. 1980) ...........................................................................20

*United States v. 416.18 Acres of Land*,
514 F.2d 627 (7th Cir. 1975) .....................................................................21, 25

*United States v. New York*,
160 F.2d 479 (2d Cir.), *cert. denied*, 331 U.S. 832 (1947)...................................20

**STATUTES**

16 U.S.C. § 791a *et seq.*....................................................................................8

16 U.S.C. § 796(11)....................................................................................8, 20

16 U.S.C. § 797(e)......................................................................................8, 23

16 U.S.C. § 803(a)(1)..................................................................................8, 23

16 U.S.C. § 814.................................................................................1, 2, 18, 19

Federal Power Act.................................................................................. passim

**RULES**

Fed. R. Civ. P. 56 ............................................................................................1

LR 7-1(a)(1)(A) ..............................................................................................1

LR 7-2(b) .......................................................................................................1

**REGULATIONS**

OAR 141-082-0340(2)....................................................................................14

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Portland General Electric Company ("PGE") certifies that they conferred in good faith by telephone with counsel for Defendant State of Oregon, by and through the Oregon Department of State Lands ("DSL"), and Intervenor Defendant Confederated Tribes of the Grand Ronde Community of Oregon, a federally recognized Indian tribe (the "Grand Ronde"), on PGE's motion for summary judgment. The parties were unable to resolve this motion, which is dispositive in nature, by agreement or stipulation.

## LR 7-2 CERTIFICATION

This brief complies with the applicable word-count limitation under Local Rules 7-2(b) because it is under thirty-five (35) pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, PGE respectfully moves for summary judgment on its claim in this action under Section 21 of the Federal Power Act (16 U.S.C. § 814) seeking eminent domain (condemnation) as to that certain five acres of real property along the Willamette River near West Linn, Oregon, as described more particularly on Exhibit B to PGE's Complaint in this matter (ECF 1-3) (the "Condemnation Property"), which condemnation claim is directed against DSL and Intervenor-Defendant Grand Ronde. This motion includes a request for summary judgment with respect to PGE's claim of relief for condemnation, as well as all affirmative defenses alleged in this matter by DSL (ECF No. 14, at § 14) and the Grand Ronde (ECF No. 21 at ¶¶ 9-17). This motion is supported by the Declaration of Erick J. Haynie (the "Haynie Declaration" or "EH"), the Declaration of Nick Loos (the "Loos Decl." or "NL"), and the Declaration of Mark Lindley (the "Lindley Declaration" or "ML"), each filed concurrently herewith, as well as the Memorandum of Law set forth below, and the existing Court file.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

This is a condemnation action by PGE, a privately owned electrical utility.  This action arises in connection with a hydroelectric project owned by PGE that is licensed under the Federal Power Act (16 U.S.C. § 814) (the "Federal Power Act").  PGE brings this action under Section 21 of the Federal Power Act to condemn approximately five (5) acres of land located within the Willamette River in between Oregon City and West Linn—and specifically an area of land located with the "Willamette Falls" waterfalls in the Willamette River (the "Condemnation Property").  The Condemnation Property is located directly within and adjacent to the operational boundary of PGE's Willamette Falls Project No. 2233, which includes the 16.030-megawatt T. W. Sullivan Hydroelectric Plant (the "Sullivan Plant" or the "Facility").  The Sullivan Plant is owned and operated by PGE.  PGE filed this action to resolve its dispute with the DSL over DSL's claim of ownership to the Condemnation Property, by declaring PGE to be the one true owner of the property, which in turn will allow PGE to manage and operate the Sullivan Plant consistent with its various regulatory obligations.

PGE is the undisputed fee owner of most of the land area comprising both the Facility and Willamette Falls.  The Condemnation Property consists of only five-acres (approximately) of the waterfall area of Willamette Falls.  For context, these photographs show Willamette Falls and portions of the Facility:



(ML Ex. 1).



(ML Ex. 2).

The Condemnation Property is described more specifically in PGE's prior court

submissions[1] and includes a rocky area (depicted with the yellow circle below) that the Grand

Ronde wishes to use for platform fishing (as discussed further below):

---

[1] The Condemnation Property is depicted on the map attached as Exhibit B to the Complaint.
*See* ECF 1-3 (map and legal description of Condemnation Property); *see also* ML ¶ 11 & Exs. 4-
5.  The legal description was prepared by an Oregon licensed surveyor, Patrick Gaylord.  *See*
ECF 17 (Gaylord Declaration) & EH ¶ 3.

3-    MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

062187.0028\163516373.21



(ML Ex. 3).

The Condemnation Property is treacherous. The falls themselves are dangerous to the public at large because they comprise a substantial waterfall. Willamette Falls is the largest waterfall in the Northwestern United States by volume, and the seventeenth widest in the world. It is "horseshoe" in shape, 1,500 feet (460 m) wide and 40 feet (12 m) high with a flow of over 30,000 cubic feet of water per second. As such, the falls can easily trap, injure or drown members of the public at large who might get too close to them.[2]

The Condemnation Property is also located directly within PGE's area of operations of the Facility. PGE's ability to manage and control the Condemnation Property (and the whole of the Facility) is essential for PGE operations and general public safety. PGE is also required by the Federal Energy Regulatory Commission ("FERC") to maintain legal ownership and control over all land necessary or appropriate in the maintenance and operation of the Facility. FERC is the federal administrative agency that issued PGE its license, under the Federal Power Act, to operate a hydroelectric facility at Willamette Falls.

In addition to providing electricity to the larger Portland community, Willamette Falls has also been an important economic and social gathering place for Native Americans to fish and gather lamprey eels off the rocks since long before the formation of the United States and Oregon statehood. The Willamette Falls is deeply rooted in the culture of various federally

---

[2] ML ¶ 7; NL ¶ 5.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

recognized native American tribes.  For years, PGE has attempted to facilitate equitable access to Willamette Falls by all federally recognized Northwest tribes for cultural practices, including ceremonial fishing.  These efforts have involved PGE working with various area tribes— including not just the Grand Ronde, but also the Confederated Tribes of Siletz Indians (the "Siletz"), the Confederated Tribes of Warm Springs (the "Warm Springs"), the Confederated Tribes of the Umatilla Reservation (the "Umatilla") and the Yakama Nation—on safety protocols and access procedures to facilitate cultural practices in a manner consistent with PGE's safety, security and operational control needs of its hydroelectric facility.  PGE has been successful in reaching general consensus around a proposed "Perpetual Cultural Practice Easement" (the "PCPE") with the Siletz, Warm Springs, Umatilla and Yakama Nation.  However, PGE's discussions with the Grand Ronde over the PCPE, and other prior concepts relating to facilitating cultural practices at Willamette Falls going back to 2016, have not been successful in reaching a consensus or agreement with Grand Ronde.

Dissatisfied with its discussions with PGE on cultural practices at Willamette Falls, and unbeknownst to PGE, Grand Ronde in 2018 began pursuing an alternative strategy of obtaining legal access rights to the falls with the State of Oregon via DSL, as a potential alternative grantee of access rights.  As a result of those efforts, on August 31, 2018, DSL issued an order (via a "Registration"), purporting to authorize the Grand Ronde to access and use a rock outcropping at the base of Willamette Falls (and within the Condemnation Property and FERC-established project boundary) to install a fishing platform at various times of the year.  PGE disagreed that DSL had regulatory authority over the property purportedly subject to the Registration and on September 28, 2018, initiated an administrative appeal of the Registration.  That appeal ultimately went before Administrative Law Judge Alison Webster, who in May of 2019 stayed that administrative proceeding to allow the parties to pursue a collaborative dispute resolution process (mediation), led by federal Judges Edward Leavy and Anna Brown.  That mediation

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

process was not successful, with DSL and Grand Ronde withdrawing from mediation discussions in May of 2021.

Given the unsuccessful mediation, PGE initiated these condemnation proceedings in April of 2022 to resolve through condemnation any conceivable question as to PGE's fee ownership of the Condemnation Property. PGE's decision to pursue condemnation is reasonable and necessary, given the safety and operational issues surrounding the Condemnation Property and PGE's mandate from FERC that PGE own the land on which PGE operates a hydroelectric facility. As discussed in this memorandum, after securing legal title to the Condemnation Property through this proceeding, PGE intends to continue to work toward equitable access for all area tribes to engage in cultural practices at Willamette Falls. In order to do so, however, and to meet its FERC license obligations, PGE must hold clear legal title to the Condemnation Property in question.

PGE is entitled to summary judgment in this action because there is no genuine issue of material fact that PGE is entitled to condemn the Condemnation Property under the powers delegated to PGE under Section 21 of the Federal Power Act. That statute confers broad authority upon PGE, as a FERC licensee, to exercise the federal government's right of eminent domain over land that is necessary for the licensed project. The Condemnation Property is necessary and appropriate for the maintenance and operation of the Facility.[3]

Under the operative standard of review, PGE's determination of "necessity" under the Federal Power Act is subject to judicial review, if at all, only to the extent of deciding whether PGE determination of necessity was "arbitrary, capricious, or made in bad faith."[4] This is an exceptional burden that neither DSL nor the Grand Ronde can meet based on the undisputed facts. To be sure, DSL does not even allege facts against PGE that might possibly implicate a review under this exceptional standard. Nor has DSL engaged in any discovery in this action in an effort to prove such a case. In its answer as Intervenor-Defendant, Grand Ronde makes a

---

[3] *See* NL ¶¶ 5, 8.
[4] *Chapman v. Public Utility District No. 1 of Douglas County*, 367 F.2d 163 (9th Cir. 1966).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

conclusory allegation of "bad faith" and "improper purpose" against PGE and its decision to pursue condemnation under the Federal Power Act,[5] but articulates no factual basis for that allegation.  There are no facts remotely (let alone reasonably) demonstrating that PGE engaged in any improper conduct as concerns its decision to pursue condemnation in this matter.  Stated differently, there is no evidence from which any reasonable fact finder could conclude that PGE's determination to pursue condemnation in this matter was "arbitrary, capricious, or made in bad faith."  Consequently, PGE is entitled to summary judgment.

## II.    FACTUAL BACKGROUND

### A.    The Parties.

PGE is a publicly held Oregon business corporation.  (ML ¶ 3).  PGE was first registered with the Oregon Secretary of State on July 25, 1930.  (*Id.*)

DSL is an administrative agency of the State Land Board.  (EH ¶ 2).  On behalf of the State Land Board, DSL manages land owned by the State of Oregon.  (*Id.*)

The Grand Ronde is a federally recognized Indian tribe.  According to its website, the Grand Ronde "includes over 30 tribes and bands from western Oregon, northern California, and southwest Washington.  Since time immemorial tribal people have relied on these traditional landscapes for their livelihood.  The fish and game were plentiful and what the lands didn't provide, they acquired by trade."  (EH ¶ 5 & Ex. 3).  The Grand Ronde cites a long heritage with Willamette Falls and other Northwest locations.  As Grand Ronde notes on its website, "[r]atified and unratified treaties between the Tribes and the United States Government from 1853 through 1855 resulted in the forced removal of tribal members from their ancestral homelands.  Despite this removal, tribal members maintained their connection to their homelands and areas such as Willamette Falls and Table Rocks."  (*Id.*)

The Siletz, Warm Springs, Umatilla and Yakama Nation also have substantial historical and cultural connections to Willamette Falls.  (ML ¶ 15).

---

[5] Answer of Grand Ronde (ECF 21), at ¶ 11.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

B.    **The Sullivan Plant.**

Using generators originally employed in a Portland sawmill, the Willamette Falls Electric Company, a precursor of PGE, produced the nation's first long-distance transmission of electricity on June 3, 1889.  (ML ¶ 4).  The Sullivan Plant is Oregon's oldest hydro plant in current operation and the third oldest in the United States.  (*Id.*)  Today, the Facility generates an average of 122 million kilowatt-hours per year—enough to power about 11,000 homes.  (*Id.*)

PGE is the owner and operator of the Sullivan Facility, which PGE has operated for well over a century.  (ML ¶ 5).  Willamette Falls rest immediately up-river from the Sullivan Plant, and directly below the dam owned by PGE.  Waters pass to over the dam, and down the Willamette Falls, to generate electricity at the Sullivan Plant for use by the public.  (*Id.*)  PGE is the undisputed fee owner of substantial portion of Willamette Falls, with the areas of disputed ownership limited to those areas indicated in red on the map attached to PGE's Complaint (ECF 1-3) and Mr. Lindley's declaration (ML Ex. 5).  The photographs of the Sullivan Facility and Willamette Falls referenced in the Introduction are found at Exhibits 1-3 to Mr. Lindley's declaration.

C.    **FERC Ownership Mandate.**

The Facility has been and is licensed and regulated by FERC pursuant to the Federal Power Act, 16 U.S.C. § 791a *et seq*.  PGE is required under such regulatory authority to continuously own, control and operate the Facility in order to generate electric power in the public's interest and for the benefit of the public.  *See, e.g.*, 16 U.S.C. §§ 796(11), 797(e), 803(a)(1).  PGE holds FERC License No. 2233 under the most recently issued license dated December 8, 2005.  *See* ML Ex. 6 (PGE FERC license) (113 FERC ¶¶ 62, 186 (2005)).  PGE is required by FERC, pursuant to Standard Article 5 of the Project's license, to own all lands that are necessary or appropriate to carry out all purposes of the Facility.  *See* PGE FERC license (ML Ex. 6) at 152 ("Article 5").

As FERC has explained:

> Standard license Article 5 requires the licensee to acquire and
> retain all interests in non-federal lands and other property

8-    MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

> necessary or appropriate to carry out project purposes. The
> licensee may obtain these property interests by contract or, if
> necessary, by means of federal eminent domain pursuant to FPA
> Section 21. A licensee's property interests can range from fee
> simple to perpetual or renewable leases, easements, and rights-of-
> way. If the licensee wishes to convey any of its interests in project
> property, Article 5 requires it to obtain the Commission's approval.

Wis. Pub. Serv. Corp., 104 FERC ¶ 61,295, at PP 14-15 (2003) (copy attached EH Ex. 2).

Standard Article 5 is included in each license issued by FERC, including PGE's license for the

Project at issue here. *See* EH Ex. 2 (Portland Gen. Elec. Co., 113 FERC ¶ 62, 186 (2005)

(Ordering Paragraph (G)) (subjecting the Project license to the standard license articles in

FERC's Form L-3)). Standard Article 5 of PGE's Project license provides, in relevant part:

> The Licensee, within five years from the date of issuance of the
> license, shall acquire title in fee or the right to use in perpetuity all
> lands, other than lands of the United States, necessary or
> appropriate for the construction maintenance, and operation of the
> project. The Licensee or its successors and assigns shall, during
> the period of the license, retain the possession of all project
> property covered by the license as issued or as later amended,
> including the project area, the project works, and all franchises,
> easements, water rights, and rights or occupancy and use; and none
> of such properties shall be voluntarily sold, leased, transferred,
> abandoned, or otherwise disposed of without the prior written
> approval of the Commission, except that the Licensee may lease or
> otherwise dispose of interests in project lands or property without
> specific written approval of the Commission pursuant to the then
> current regulations of the Commission.

(ML Ex. 6 at 152).

Based on these authorities and FERC's direction and guidance, PGE is required under its

FERC license to acquire and hold legal title to all land necessary and appurtenant to its

hydroelectric operations at the Sullivan Plant including the Condemnation Property. (ML ¶ 13).

Indeed, as discussed further below, FERC has specifically required that PGE establish

unequivocal fee ownership of the Condemnation Property before PGE may proceed further with

its request that FERC allow a non-project use of project property (i.e., PGE's request that FERC

allow cultural practices at Willamette Falls). (*Id.* ¶¶ 24, 27).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

### D.    The Condemnation Property.

As noted in the Introduction, the Condemnation Property consists of approximately five (5) acres of land comprising a small portion of Willamette Falls over which DSL has asserted a claim of ownership.  (ML ¶ 9).  The Condemnation Property is depicted on the map and legal description attached as Exhibit B to the Complaint.  (ECF 1-3; *see also* ML Ex. 5 (map and legal description of Condemnation Property)).

PGE has also submitted an expert report from its licensed Oregon professional surveyor, Patrick M. Gaylord, discussing his methods and conclusions for his survey of the Condemnation Property.  EH Ex. 3 (Gaylord report); ECF 17 (declaration of surveyor).  No party has disputed Mr. Gaylord's report or survey.  (EH ¶ 3).  Nor has any party sought to depose Mr. Gaylord. (*Id.*)

PGE has also submitted an expert report from a licensed commercial real estate appraiser, John V. Donnerberg.  Mr. Donnerberg has offered an opinion of value of the Condemnation Property of $150,000.  *See* EH Ex. 4 (Donnerberg expert report).  No party has disputed or rebutted Mr. Donnerberg's report or valuation opinion.  (EH ¶ 6).  Nor has any party sought to depose Mr. Donnerberg.  (*Id.*)

### E.    Public Safety and Operational Concerns.

There are significant public safety and hydroelectric operational hazards in and around Willamette Falls and the Sullivan Plant as a whole.  Working to address these concerns has been a focus of PGE in its dealings concerning cultural practices at Willamette Falls.  *See* ML ¶ 7; NL ¶¶ 5-7, 8(d)-(e); ML Ex. 13 (Board Resolution) ("the Board hereby finds and declares that in order to maintain compliance with the FERC License, *the safe and efficient operation of the Project*, and for public necessity, it is necessary that the Company have fee title to the Disputed Property . . .") (emphasis added); *see also* EH (Ogle Depo.) at 34:14-16 (noting, as to Grand Ronde's desire for a fishing platform, concerns by PGE's director of environmental services to be "around *the safety and the operations*") (emphasis added).  The operational and public safety

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

risks created by the presence of people in and around the Condemnation Property are numerous and substantial:

- Risk of fatal electric shock exists for people in certain areas of the Condemnation Property due to ground fault electrical considerations that can occur periodically, which risks are potentially increased by the presence of implanted metals or poles in and around the Condemnation Property.

- For operational reasons, water flows may suddenly increase and inundate the Condemnation Property. These reasons include voltage changes, equipment failure, mechanical issues, debris loading on plant intake structures, precipitation, snow melt, and other causes.

- The Facility operates with limited personnel in reliance on industry-standard automated spill and flow controls that regulate the flow of water over the dam and through the power plant. This poses an increased safety risk to any person who might be located in or around the Condemnation Property, as automated spills can cause sudden increases to water flow which are sufficiently material that they could easily cause people to be washed into the river.

- Relatedly, other uncontrolled flows of water over the dam can also occur, which poses risks to water impacts to persons who may be on the Condemnation Property.

- Additional risks to life and safety can be caused by dam equipment failure, debris kicking down flashboards, and flow releases upstream.

- Flashboards, referenced immediately above, are wooden structures installed along the top of the dam to raise the river level during lower flow periods. These boards are designed to break away if impacted by debris or at natural end of use. A flashboard break away can be sudden and unexpected, and can cause significant debris to fall over the walls or a sudden release of water.

11-   MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

- Other large debris can on occasion flow down the river, and over Willamette Falls, including very heavy and large items, such as trees. Trees and other large items of debris present a public safety risk in and around Willamette Falls.

- There are risks of slipping and falling on the rocks in and around the Condemnation Property due to moist conditions, including to members of the public and employees of PGE.

- There are risks associated with swift water injuries to persons in or around the Condemnation Property, and to first responders and PGE employees who might be called to assist others, or members of the public, who may attempt to access portions of the Condemnation Property.

(NL ¶¶ 5-6, 8(d)-(e)); *see* EH Ex. 12 (Loos Depo) at 33:2–7 ("It's dangerous out there. Anybody that goes out there can see that there are inherent risks at the Falls, but there are hazards that are not known, that are not obvious; and that's the debris above, it's the ground fault issues, it's the automatic operations.").

This list of life safety risks in around Willamette Falls is not necessarily exhaustive. Nor is the safety concern new. *See* NL ¶ 8(d)-(e) (discussing FERC license requirements around PGE maintaining public safety at the Condemnation Property and Facility as a whole); *see also* NL Ex. 1 (5/8/17 email from Nick Loos observing, in connection with a proposed lease to a portion of Willamette Falls for the installation of fishing platforms, that "[t]his is an area that is extremely dangerous and is out of our control (i.e., when flashboards fail, flow increases and 60' cottonwood trees crest the falls)."); NL Ex. 2 (5/8/17 email from Bradley Jenkins of PGE responding to Mr. Loos that "I am not in favor of creating a hazard for members of the public").

Due to these various considerations, PGE strictly prohibits the public at large from accessing the areas immediately beneath Willamette Falls. (Loos Decl., ¶ 6). Boaters are also prohibited by governing marine authorities from boating in and around Willamette Falls, with large and conspicuous signage posted all around the property restricting access and warning of

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

danger. (*Id.*) The falls themselves are also massive and turbulent, generating a boisterous noise and patently obvious high water flow volume that any reasonable observer standing near the falls is struck by its power and attending danger. (*Id.*)[6]

PGE's need to operate the Facility necessarily includes managing the safety risk to its employees and members of the public. The above-cited safety factors, among other things, necessitate PGE retaining strict ownership control over areas within the Willamette Falls horseshoe and who can access that area and at what times.

### F.    Procedural History Surrounding Condemnation Property and PGE's Decision to Condemn under the Federal Power Act.

PGE has for a period of years been attempting to facilitate access to Willamette Falls by all federally recognized tribes desiring to perform ceremonial fishing at the parcel of land within the Condemnation Property, and marked as the "Fishing Platform Site" in Exhibit B to PGE's complaint (the "Platform Area"), in a manner that is safe, allows for on-going operations of the Facility, and complies with all of the various federal laws and regulations governing PGE's ownership and operation of the Facility and PGE's hydro license with FERC. *See* EH Ex. 5 (Ogle Depo) at 106:21–23 ("So I've always felt that everybody in PGE that I've worked with are always curious about the tribes and trying to do the right thing.").

For example, on May 3, 2018, PGE and the Grand Ronde entered into a permit letter agreement to provide Grand Ronde with non-exclusive access to and use of a specified portion of the Condemnation Property for ceremonial fishing. *See* ML Ex. 7 (the "2018 Letter Agreement"). Grand Ronde was not satisfied by this arrangement, however, and it terminated in September of 2018. (ML ¶¶ 16-18).

In an effort to secure exclusive fishing rights at Willamette Falls or rights other than those provided by the 2018 Letter Agreement, and unbeknownst to PGE, Grand Ronde began pursuing a strategy of obtaining different or additional rights through the State of Oregon as a

---

[6] *See also* EH Ex. 8 (4/26/17 email from Kelly Dirksen of Grand Ronde describing condition of Willamette Falls on a particular occasion to be "crazy out there").

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

potential alternative fee owner of the Platform Area at Willamette Falls. As a result of those efforts, on August 31, 2018, the Oregon Department of State Lands ("DSL") issued an order (via a "Registration"), purporting to authorize the Grand Ronde to access and use a rock outcropping at the base of Willamette Falls to install a fishing platform at various times of the year. (ML Ex. 8) (8/31/18 "Registration APP0059537-RG"). PGE disagreed that DSL had regulatory authority over the Platform Area (or any portion of the Condemnation Property). (ML ¶¶ 18-20). PGE maintained and continues to maintain that, under federal law and the rules and regulations of FERC, PGE should properly own and control the Condemnation Property (including the Platform Area). (*Id.*) As noted above, PGE is required by FERC to maintain exclusive ownership and control over the entirety of its power facility.

Consistent with its regulatory obligations, PGE on September 28, 2018, filed requests for a contested case hearing before the Director of DSL pursuant to OAR 141-082-0340(2), urging that DSL improperly issued the Registration (the "Administrative Law Proceeding"). *See* EH Ex. 9 ("Request for Contested Case Hearing"). In May 2019, Administrative Law Judge Alison Webster stayed the Administrative Law Proceeding to allow the parties time to pursue collaborative dispute resolution. *See* EH Ex. 10 (5/2/19 stay order). Throughout 2020 and 2021, PGE worked with mediators Judge Edward Leavy and Judge Anna Brown in an effort to find a mutually agreeable path toward facilitating ceremonial fishing at the Platform Area for all federally recognized tribes desiring to perform ceremonial fishing at the Platform Area in a way that complies with PGE's federal regulatory obligations. (ML ¶ 23). In May 2021, however, DSL and Grand Ronde withdrew from mediation. (*Id.*) No mediated agreement was reached. (*Id.*) PGE understands that one point of dissatisfaction of Grand Ronde is Grand Ronde's desire for access to the falls without involvement or coordination with PGE or any other Tribe or party. (*Id.*)[7]

---

[7] Grand Ronde's desire to unilaterally access Willamette Falls continues to this day. As recently as May of 2024, Grand Ronde notified PGE by email that "Grand Ronde is under no obligation to comply with [PGE's] 'conditions' and the Tribe's access to the platform area does not

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

In a further effort to facilitate tribal ceremonial fishing at the Property, PGE on April 16, 2021, filed a Non-Project Use of Project Lands application with FERC requesting approval to allow PGE to grant a Perpetual Cultural Practices Easement ("PCPE") to any federally recognized tribe that believed it had cultural ties to the Property. (ML Ex. 12) (copy of PGE's application to FERC for a PCPE to facilitate cultural practices at Willamette Falls). FERC ultimately rejected this request, without prejudice, because DSL claimed ownership of the Condemnation Property. (ML ¶¶ 24, 27 & Ex. 12). In order to obtain permission for a non-project use of any portion of the Condemnation Property, FERC requires that PGE establish unequivocally that PGE is the exclusive owner of the fee interest in the Property in question. (*Id.*)

On July 28, 2021, PGE's Board of Directors adopted a resolution declaring a necessity to acquire all of Defendant DSL's right, title and interest in, and to, the Condemnation Property. (ML ¶ 25 & Exs. 13, 13A). The Board issued resolution in connection with a July 28, 2021 Board meeting at which it received a presentation on the matter by Jim Ajello, then PGE's Senior Vice President of Finance, Chief Financial Officer and Treasurer, and Lisa Kaner, PGE's then Vice President, General Counsel and Corporate Compliance Officer. (*Id.*) By and through its Board resolution issued in connection with the meeting, PGE authorized the commencement of this condemnation proceeding, finding and declaring (among other things) that "in order to maintain compliance with the FERC License, the safe and efficient operation of the Project, and for public necessity, it is necessary that [PGE] have fee title to the Disputed Property . . . ." (ML Ex. 13 at 10-11).

Following the adoption of the Board of Directors' resolution, PGE continued to try to resolve this matter without litigation. PGE offered to acquire all of Defendant DSL's claimed right, title and interest in, and to the Property. (ML ¶ 26). On or about January 13, 2022, more

---

constitute consent to those conditions. We will be fishing at Willamette Falls as antecedent members of the Grand Ronde Tribes have done for thousands of years." (ML ¶¶ 32, 34 & Exs. 11 & 17).

15- MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

than forty (40) days prior to the commencement of this action, PGE delivered to Defendant DSL a formal offer, accompanied by an appraisal, to acquire all of Defendant DSL's claimed right, title and interest, in, and to, the Property. (*Id.*) The amount of the offer was $150,000.00, which is full and adequate compensation to Defendant for PGE's acquisition. (*Id.*) DSL did not accept, and has not accepted, PGE's offer to acquire the Condemnation Property by agreement. (*Id.*)

DSL having rejected PGE's offer to purchase its claimed interest in the Condemnation Property, and consistent with the resolution of the PGE Board of Directors dated July 28, 2021, PGE initiated this condemnation suit on April 8, 2022.

### G.    PGE's future intentions.

Upon confirmation of fee ownership of the Property through these proceedings, PGE's current intention is to resubmit its request to FERC for a PCPE (a non-project use) to facilitate cultural practices at Willamette Falls by all federally recognized tribes desiring to perform such practices at the Condemnation Property, pursuant to such reasonable and appropriate safety and operational conditions as may be determined by FERC and PGE. (ML ¶ 29). A copy of the draft proposed PCPE is attached as Exhibit 15 to the Lindley Declaration, and sets forth a framework for facilitating cultural practices at Willamette Falls. (*Id.*) PGE has been transparent on its intentions to pursue a PCPE from FERC, even posting about this goal on its public website.[8] To date, the Siletz, Warm Springs, Umatilla and Yakama Nation tribes have all expressed interest in moving forward with a cooperative approach to cultural practices as contemplated by the PCPE. (ML ¶¶ 29-30).[9] PGE filed the application for the purpose of seeking to facilitate safe and equitable access for all federally recognized area tribes to engage in traditional cultural practices at Willamette Falls in a manner that also allows PGE to operate the Facility consistent with its

---

[8] *See* https://portlandgeneral.com/news/on-pge-efforts-to-resolve-the-property-dispute-at-willamette#:~:text=On%20PGE%20efforts%20to%20resolve%20the%20property%20dispute,Lands%20to%20the%20Confederated%20Tribes%20of%20Grand%20Ronde. A print of the main page of this webpage is attached as Exhibit 16 to the Lindley Declaration.
[9] PGE understands that one or more other tribes may address their support of the PCPE through an amicus submission.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

regulatory obligations, and through a legally binding property document specifying appropriate terms and conditions that address these safety, regulatory, equity and operational requirements. (*Id.* ¶¶ 29-31).

## III.   LEGAL STANDARDS

### A.     Summary judgment standard.

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Field TurfBuilders, LLC v. FieldTurf USA, Inc.*, No. 03:09-CV-671-HZ, 2011 WL 4903215, at *2 (D. Or. Oct. 14, 2011).  The movant has the initial burden of informing the court of the basis of its motion, and identifying evidence that demonstrates the absence of a genuine issue of material fact.  *Id.*  The non-movant then has the burden—and "[t]his burden is not a light one"—of rebutting the movant's showing with admissible evidence.  *See Batiz v. Am. Commercial Sec. Servs.*, 776 F. Supp. 2d 1087, 1091, 1095 (C.D. Cal. 2011).  It may not rely on implausible evidence, such as self-serving and uncorroborated exhibits and deposition testimony.  *U.S. v. Cruz*, 669 F. App'x 883, 883-4 (9th Cir. 2016) (affirming district court, disregarding as "implausible" non-movant's testimony that was "largely unsupported and self-serving" at summary judgment); *see also Batiz*, 776 F. Supp. 2d at 1098 (finding plaintiff's evidence "inherently implausible" and not creating a genuine issue of material fact where "[his] deposition testimony . . . conflicts with the undisputed facts, and [he] has not produced, nor could he identify any documents demonstrating [his side of the story]").

### B.     Federal Power Act Standards.

#### 1.     Condemnation Authority Under § 21 of the Federal Power Act.

To facilitate development of hydropower projects, Section 21 of the Federal Power Act confers broad authority upon FERC licensees to exercise the federal government's right of eminent domain over lands that are necessary for a licensed project.  Section 21 provides, in relevant part:

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

> When any licensee cannot acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others *necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto,* in conjunction with any improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts.

16 U.S.C. § 814 (emphasis added).

Under Section 21 of the Federal Power Act, Congress vested licensees "with the governmental power of eminent domain," such that a FERC licensee's exercise of that authority "is thus the act of an agency of the sovereign." *Tuscarora Nation of Indians v. Power Auth. of the State of N.Y.*, 257 F.2d 885, 894 (2d Cir. 1958), *rev'd on other grounds sub nom. Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960). When condemning land under Section 21, "a licensee acts as the agent of the United States government." *Ga. Power Co. v. 54.20 Acres of Land*, 563 F.2d 1178, 1181 (5th Cir. 1977), *overruled on other grounds*, *Ga. Power Co. v.* 138.30 Acres, 617 F.2d 1112 (5th Cir. 1980).

The scope of a FERC licensee's condemnation power under Section 21 is broad. It empowers a licensee to condemn all lands that are necessary (or needed) for the construction, maintenance, or operation of a licensed project. *See*, *e.g.*, *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 118 (1960) (explaining that "Section 21 of the Act, by broad general terms, authorizes the licensee to condemn 'the lands or property of others necessary to the construction, maintenance, or operation of any' licensed project," and stating that "[i]n the light of these authorities we must hold that Congress, by the broad general terms of § 21 of the Federal Power Act, has authorized the Federal Power Commission's licensees to take lands owned by Indians, as well as those of all other citizens, *when needed* for a licensed project" (quoting 16 U.S.C. § 814) (emphasis added)).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

The condemnation authority is not limited to property located strictly within a project's formal FERC boundary. Notably, 16 U.S.C. § 814 makes no reference to a FERC boundary, and instead references lands "necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto." *See also Flambeau Hydro, L.L.C.*, 113 FERC ¶ 61,236, 61,921 (2005) ("While all facilities, lands, and waters needed to carry out project purposes should be within the project boundary, the fact they may not be does not alter the licensee's obligations under the license."); *see also PacifiCorp*, 80 FERC ¶ 61,334, 62,113–14 (1997) ("A licensee is required to acquire and retain all interests in non-federal lands necessary or appropriate to carry out project purposes. . . . If the Commission requires additional control in order to accomplish a project purpose, it must direct its licensee to obtain additional rights, whether by contract or eminent domain. The Commission's ability to require its licensee to obtain additional property interests is not dependent on whether the property in question is inside or outside of the pre-existing project boundary.").[10]

In determining which lands are "necessary" for a licensed hydropower project, and therefore within the scope of a licensee's power to condemn under Section 21 of the Federal Power Act, it is important to recognize that the FPA broadly defines a "project" as consisting not only of the powerhouse itself, but also:

> all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of [the unit of development], and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way,

---

[10] *See also Pub. Util. Dist. No. 1 of Chelan Cnty., Wash.*, 15 FERC ¶ 62,168, at 63,279 (1981) ("Article 5 requires the District to acquire sufficient property rights for the maintenance and operation of the project. It is emphasized that the 'maintenance and operation of the project' encompasses the broad range of project purposes mandated by the comprehensive development standard of [FPA] Section 10(a). Should the District at some point in the future find itself unable to control or prevent an objectionable use of project lands, the District may be directed to take appropriate measures to protect project resources, including, inter alia, the acquisition of additional rights in the project lands involved.").

19-   MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

ditches, dams, reservoirs, lands, or interest in lands the use and
occupancy of which are necessary or appropriate in the
maintenance and operation of such unit . . . .

16 U.S.C. § 796(11).

### 2.    Standard of Review.

The United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") applies a

highly deferential standard of review when reviewing the decision of a FERC licensee to

exercise the condemnation authority vested by Section 21 of the Federal Power Act. *Chapman v.*

*Public Utility District No. 1 of Douglas County*, 367 F.2d 163 (9th Cir. 1966). In *Chapman*, the

Ninth Circuit established that a hydropower licensee's "determination of necessity under the

federal statute was subject to judicial review, if at all, only to the extent of deciding whether [the

licensee's] determination of necessity was arbitrary, capricious, or made in bad faith." *Id.* at 167

(citing *S. Pac. Land Co. v. United States*, 367 F.2d 161 (9th Cir. 1966)). A condemnation

decision by a FERC licensee meets this highly deferential standard of review if the licensee

exercised its discretion "honestly, fairly, and upon due consideration . . . , even though there be

room for a difference of opinion upon the course to follow, or a belief by the reviewing authority

that an erroneous conclusion has been reached." *Id.* (internal quotation marks omitted).

The Ninth Circuit's highly deferential standard of review with respect to condemnation

decisions by FERC licensees is consistent with various other federal cases throughout the nation.

*See e.g.*, *United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par., State of*

*La.*, 616 F.2d 762, 767 (5th Cir. 1980) (explaining that in cases of condemnation by the Federal

government, a court may inquire only "whether the use for which private property is authorized

by the legislature to be taken, is in fact a public use," and that the "court may ask in this inquiry

whether the authorized officials were acting in bad faith or arbitrarily or capriciously by

condemning given land"); *Rivers Electric Co. v. 4.6 Acres of Land*, 731 F. Supp. 83, 85

(N.D.N.Y. 1990) ("[t]he scope of judicial review over the exercise of condemnation power

pursuant to federal statute is 'decidedly limited.'") (quoting *United States v. New York*, 160 F.2d

479, 481 (2d Cir.), *cert. denied*, 331 U.S. 832 (1947)); *United States v. 0.35 of Acre of Land*, 706

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

F. Supp. 1064, 1073 (S.D.N.Y 1988) (stating that "the only subject for inquiry" when reviewing a condemnation decision "is whether acquisition of property was for a congressionally authorized purpose.").  As the United States Court of Appeals for the 7th Circuit has explained:

> The only question for judicial review in a condemnation proceeding is whether the purpose for which property was taken is for a Congressionally authorized public use . . . It is not for the courts to review the necessity of the taking . .  Nor is it for courts to consider broadside allegations that the purported public use to be served is merely a pretense or a sham to cover arbitrary official conduct . . . Only in cases of egregious bad faith will the right to condemn be denied . . ., for in those circumstances, the taking may not be for a 'public' use at all.

*United States v. 416.18 Acres of Land*, 514 F.2d 627, 631-32 (7th Cir. 1975).

## IV.    ARGUMENT

### A.    There can be no reasonable dispute that PGE has condemnation authority under the Federal Power Act.

There can be no reasonable question that PGE has condemnation authority under the Federal Power Act.  Section 21 of the Federal Power Act confers broad authority upon PCE, as a FERC licensee, to exercise the federal government's right of eminent domain over lands that are necessary for the licensed project.  The Condemnation Property is located within the Willamette River, directly within PGE's area of operations of its hydroelectric facility.  For the reasons discussed above, there are substantial operational and public safety risks associated with public entry into the Condemnation Property.  *See* NL ¶¶ 5, 8(d)-(e).  Additionally, PGE's FERC license affirmatively requires PGE to hold fee ownership of its facility and any and all property necessary for operations, as discussed above.

Additionally, and as detailed in the accompanying Loos Declaration, PGE also has numerous operational obligations, arising under its FERC license, that requires PGE to have regular and continuous access to the Condemnation Property.  (NL ¶ 8; *see also* ML ¶ 31).  These obligations include not just issues of public safety and security, but various other obligations arising under PGE's federal FERC license, including work relating to stranded fish, fish salvage, a fish ladder located in the Willamette River, lamprey passage, cultural resource

21-  MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

management, and work concerning management of the Abernathy Channel.  (*Id.*)  Under the circumstances, a failure by PGE to secure ownership of lands necessary or appropriate for the operation and maintenance of a FERC-licensed project potentially places PGE in legal jeopardy under its FERC license.  *See, e.g.*, *Ampersand Cranberry Lake Hydro, LLC*, 179 FERC ¶ 61,037 (2022) (imposing a $600,000 civil penalty against a hydropower licensee that violated Standard Article 5 by not retaining property interests in lands necessary or appropriate for the operation and maintenance of a FERC-licensed project).[11]

Furthermore, PGE's Board of Directors (whether or not required by the Federal Power Act) adopted a resolution declaring a necessity to acquire all of Defendant DSL's right, title and interest in, and to, the Condemnation Property.  (ML ¶ 25, Exs. 13 & 13A).  PGE has also attempted to negotiate a purchase of the Condemnation Property from DSL, but has been unable to do so, even after participating in a mediation process led by Judges Leavy and Brown.  (ML ¶¶ 23-28).  PGE has also presented all necessary offers to purchase (meeting the requirement under Section 21 of the Federal Power Act to attempt first to acquire the property by "contract or pledges"), including presentation of a $150,000 commercial valuation by a licensed Oregon appraiser that no party has opposed.

In short, PGE clearly and plainly establishes a conclusive case for condemnation under Section 21 of the Federal Power Act.  PGE is a FERC licensee, and the real property in question is clearly necessary for safe and efficient operations of the Sullivan Plant.

**B.    The State does not dispute PGE's condemnation claim.**

DSL has not taken any meaningful steps to defend this action.  Based on conferral, it is not clear to PGE whether DSL continues to dispute PGE's condemnation rights as concerns the Condemnation Property and, if so, the basis for doing so.  In its pleading, DSL appears to dispute that the Condemnation Property is properly valued at $150,000.  DSL has not, however, served any report opposing or controverting the commercial valuation submitted by PGE in connection

---

[11] A reference copy of this FERC-published opinion is found at EH Ex. 13B.

22-  MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

with PGE's expert valuation report from Mr. Donnerberg. The time for doing so has also long since passed. *See* ECF 32 (scheduling order) ("rebuttal expert reports are due by January 25, 2023"). To the extent the Court finds any genuine issue of material fact remains on valuation on these circumstances, then PGE requests in the alternative that the Court grant its motion for summary judgment on all other issues and proceed to trial on the sole issue of valuation.

### C.     The Grand Ronde's affirmative defenses each fail, as a matter of law.

The Grand Ronde is the only party who has taken discovery or sought to defend this action. In its answer, Grand Ronde asserts several affirmative defenses. Each fails, as a matter of law.

#### 1.     Grand Ronde's "bad faith" defense fails as a matter of law.

Grand Ronde asserts in its pleading that "This action should be barred because it was brought in bad faith, for improper purposes, and is arbitrary and capricious." (ECF 21, at ¶ 11). Grand Ronde offers almost no factual specificity to this allegation, claiming only that PGE is acting in bad faith because PGE is allegedly "seeking to use condemnation to invalidate the Registration, and for its convenience and its private business interests, not for public purposes authorized under section 21 of the FPA." (*Id.*)

As an initial matter, PGE is not pursuing this action for the purpose of invalidating the Registration. PGE's complaint makes no reference to the Registration. And Grand Ronde is mistaken in claiming that PGE's use is for private business interests. To the contrary, all of the uses of the Condemnation Property were required by the FERC license, after FERC considered broad public interest factors. 16 U.S.C. §§ 797(e), 803(a); *see also* NL ¶ 8 (discussing PGE's license-required uses of the Condemnation Property).

In any event, no reasonable fact finder could conclude that PGE is acting in "bad faith" to acquire fee ownership to land that is necessary for hydroelectric operations. There can be no reasonable dispute in this case that the Condemnation Property is needed to comply with PGE's FERC-issued license. Moreover, a condemnation decision by a FERC licensee is not subject to

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

review where the licensee exercised its discretion "honestly, fairly, and upon due consideration . . . , even though there be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached." *Chapman*, 367 F.2d 163.

The management of cultural practices at Willamette Falls, and PGE's active operations there, have been the subject of discussions with Grand Ronde for some time, with PGE attempting to resolve differences of opinion with Grand Ronde through a wide variety ways, including the 2018 Letter Agreement (which failed), a proposed perpetual cultural practices easement (the PCPE) (to which Grand Ronde does not agree), pursuit of permission from FERC to allow a non-project use at the Facility to facilitate cultural practices (which FERC rejected because fee ownership is in dispute with DSL), and an extensive mediation process led by two respected federal judges (which failed). The decision to pursue condemnation was also taken up at a July 28, 2021 Board of Directors meeting, in connection with which meeting the Board specifically resolved that acquiring fee ownership is necessary "in order to maintain compliance with the FERC License" and for "the safe and efficient operation of the Project." (ML 11) (Board Resolution). The record is also replete with evidence as to why it is reasonable and appropriate—and in the interest of safety to the public at large—for PGE to own and control all components of its hydroelectric facility. There can be no reasonable debate that a FERC hydropower licensee, like PGE in this case, needs to own and control the direct water way and dam area supplying water for electricity generation (i.e., Willamette Falls)—particularly here, where the facts establish indisputably that the property in question comprises a treacherous waterfall located in the middle of the Willamette River and directly in the zone of danger of PGE's electricity-generating operations. It is also reasonable for PGE to want to resolve conflicting claims of ownership—here with DSL—over treacherous lands and waterways directly involved in PGE's hydroelectric operations.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

As noted above, it is not "for courts to consider broadside allegations that the purported public use to be served is merely a pretense or a sham to cover arbitrary official conduct." *United States v. 416.18 Acres of Land*, 514 F.2d 627, 631-32 (7th Cir. 1975). "Only in cases of egregious bad faith will the right to condemn be denied . . ., for in those circumstances, the taking may not be for a 'public' use at all." (*Id.*)

The requested taking here will clearly be used for a Congressionally authorized and public purpose—hydroelectric electricity generation at a facility licensed under the Federal Power Act. There is simply no evidence of bad faith, of any kind, on the part of PGE. Indeed, FERC *specifically requires* PGE to hold fee title to the entirety of its power generating facility, such that not pursuing condemnation (or a purchase of the Condemnation Property—which efforts have failed to date) places PGE at risk of being in non-compliance with FERC. PGE has also declared a specific intention to pursue permission from FERC to facilitate cultural practices at Willamette Falls through the proposed PCPE, in a manner that has reasonable access, safety requirements that are consistent with PGE's license requirements, after PGE is clearly in title to the Condemnation Property.

Given these facts, Grand Ronde cannot show—and has not shown—any evidence from which a reasonable fact finder could conclude that PGE's decision to pursue condemnation of property within its zone operations, and as required by its FERC license, is an act that is made "in bad faith" or which was "arbitrary and capricious." Accordingly, PGE is entitled to summary judgment on this claimed defense.

### 2.    Grand Ronde's "latches" defense fails as a matter of law.

Grand Ronde claims that PGE's condemnation claim fails under the doctrine of "latches." (ECF 21 at ¶ 12). PGE has found, and Grand Ronde has identified, no provision of the Federal Power Act, or any case law from any jurisdiction, supporting the conclusion the "latches"—a state law equitable defense—is a bona fide defense to a claim of condemnation under Section 21 of the Federal Power Act. There is also no factual basis for this claim. It has only been until

25-   MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

recent years that anyone, whether DSL or Grand Ronde, has ever challenged PGE's ownership and control over Willamette Falls. Furthermore, it was not until October 24, 2022 that FERC ruled that PGE could not move forward with its proposed PCPE without clear ownership of the Condemnation Property. (ML ¶ 27 & Ex. 14). Accordingly, it fails as a matter of law.

### 3. Grand Ronde's "lack of necessity" defense fails as a matter of law.

Grand Ronde claims that PGE's condemnation claim fails due to "lack of necessity". (ECF 21 at ¶ 14). This defense, to the extent is an actual affirmative defense, also fails as a matter of law. As discussed above, it is necessary and appropriate for PGE to hold legal ownership over disputed areas of its hydroelectric facility, including areas both within and outside the project boundary,[12] for a variety of reasons, including public safety, hydroelectric operations, and to comply with the terms of PGE's license with FERC. Furthermore, PGE has so determined, with that determination not subject to judicial review except upon a showing that the Grand Ronde cannot make. *See Chapman v. Public Utility District No. 1 of Douglas County*, 367 F.2d 163, 167 (9th Cir. 1966) (establishing that a hydropower licensee's "determination of necessity under the federal statute [is] subject to judicial review, if at all, only to the extent of deciding whether [the licensee's] determination of necessity was arbitrary, capricious, or made in bad faith."). Accordingly, this defense fails, as a matter of law.

### 4. The Grand Ronde's "exhaustion" defenses each fail, as a matter of law.

Finally, Grand Ronde claims that PGE's condemnation claim fails because PGE has not "exhaust[ed]" administrative remedies before FERC. (ECF 21 at ¶ 17). This defense finds no support in fact or law. Grand Ronde fails to identify any administrative remedies available to PGE before it pursues condemnation. In fact, as noted above, FERC has specifically required that PGE establish unequivocal fee ownership over the Condemnation Property before PGE takes any further steps to seek FERC permission to use any portion of the Facility for a non-project

---

[12] Notably, the fishing platform area is located within the Facility's FERC boundary. *See* ML Exs. 4-5.

26- MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

use, such as cultural practices by Native American tribes.  Furthermore, FERC is not a proper forum to resolve property disputes.  *See*, *e.g.*, *Sac. Mun. Util. Dist.*, 178 FERC ¶ 61,112, at 15 (2022) ("Legal disputes regarding property rights—such as those that might arise when a licensee seeks to obtain an easement from a private landowner—are not within the Commission's jurisdiction.  Rather, property rights are a matter of state law for an appropriate court to resolve, as the Commission does not adjudicate property rights.").[13]  PGE is pursuing this condemnation proceeding as part of a direct mandate from FERC, and not on account of any failure to pursue an administrative remedy that the Grand Ronde does not identify in its pleading.  PGE is entitled to summary judgment on this defense.

## V.    CONCLUSION

The Court should award PGE summary judgment on its claim for condemnation in this action, and all affirmative defenses alleged by the Grand Ronde.  PGE clearly and unequivocally has authority for condemnation under Section 21 of the Federal Power Act.  While the Grand Ronde (and only the Grande Ronde) alleges PGE brings this claim in bad faith, there is no evidence from which any reasonable fact finder could so conclude.  Accordingly, summary judgment should issue.

DATED:  September 13, 2024.

PERKINS COIE LLP

By:/s/ Erick J. Haynie
**Erick J. Haynie**, OSB No. 982482
EHaynie@perkinscoie.com
**Christopher W. Rich**, OSB No. 990954
CRich@perkinscoie.com
**Megan K. Houlihan**, OSB No. 161273
MHoulihan@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000

*Attorneys for Plaintiff*

---

[13] A reference copy of the *Sac. Mun.* FERC decision is found at EH Ex. 13E.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222