

COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS





CELEBRATING
40
YEARS IN BUSINESS

(800) 528-3335
NAEGELIUSA.COM



**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**



PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,

      Plaintiff,

v.                              Case No.:  3:22-CV-00533-SI

STATE OF OREGON, by and through
THE OREGON DEPARTMENT OF STATE LANDS,
and +/- FIVE ACRES OF UNIMPROVED
LAND ALONG THE WILLAMETTE RIVER
NEAR WEST LINN, OREGON,

      Defendants

and

CONFEDERATED TRIBES OF THE GRAND
RONDE COMMUNITY OF OREGON, a
federally-recognized Indian tribe,

      Intervenor-Defendant.

_____

**DEPOSITION OF**

**MARK R. LINDLEY**

**TAKEN ON**
**TUESDAY, APRIL 18, 2023**
**9:02 A.M.**

Exhibit 11
Page 1 of 14
**PERKINS COIE LLP**
**1120 NW COUCH STREET, 10TH FLOOR**
**PORTLAND, OREGON  97209**

**APPEARANCES**

**Appearing on behalf of the Plaintiff:**

ERICK J. HAYNIE, ESQUIRE

MEGAN HOULIHAN, ESQUIRE

**Perkins Coie LLP**

1120 NW Couch Street, 10th Floor

Portland, OR  97209

(503) 727-2000

(503) 727-2222 (Fax)

ehaynie@perkinscoie.com

mhoulihan@perkinscoie.com


**Appearing on behalf of the Intervenor-Defendant:**

KIMBERLY S. D'AQUILA, ESQUIRE

DENEEN AUBERTIN KELLER, ESQUIRE

**Confederated Tribes of Grand Ronde Attorney's Office**

9615 Grande Ronde Road

Grande Ronde, OR  97347

(503) 879-5211

(503) 879-2025 (Fax)

kim.daquila@granderonde.org

daneen.aubertin@granderonde.org

Exhibit 11
Page 2 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

**APPEARANCES CONTINUED**

**ALSO PRESENT:**

J. Richard George, Esquire, In-House Counsel, Portland General Electric Company

Nicholas Loos, Portland General Electric Company

Exhibit 11
Page 3 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

INDEX

                                                    Page

EXAMINATION BY MS. D'AQUILA                           8

EXAMINATION BY MR. HAYNIE                            130

FURTHER EXAMINATION BY MS. D'AQUILA                  147

Exhibit 11
Page 4 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

A.    Sorry.

Q.    That's okay.  I'll try again.

A.    Okay.

Q.    When the Board reached its determination that it was necessary to acquire fee title, there must have been some information and facts it relied on.  Do you know what those are?

A.    Yes, generally.

Q.    Okay.  Tell me what you generally know that to be?

A.    That there was a use of property that PGE believed it owned, the subject of dispute that was within the FERC boundary, and that it was a non-project use.  And that PGE had an obligation under the FERC license to control the property within the FERC boundary, and this was the most expedient manner to accomplish that.

Q.    Okay.  And is there any other facts that you can tell me about that the Board relied on?

A.    Again generally, the safety and operational concerns that go along with the third party use of the property within the FERC boundary.

Q.    What are those?

A.    Well, the concern regarding anyone in that area, since it's what we determined to be an

Exhibit 11
Page 5 of 14

ultrahazardous area within the channel of the river, the basic channel of the river.  The security elements of having people, safety and security of having people onsite, when PGE doesn't have advanced knowledge or the ability to control operations.

And primarily, the safety aspects since the operations of the generation facility are automated.  So in addition to mother nature type elements where something could come down the river that we can't control, if there's a plant trip or something like that, then additional water could come over the dam and inundate the area where people might be.

Q.   Okay.  Are there any other safety reasons that the Board felt it was necessary to require fee title for?

A.   Not that I can think of.

Q.   What facts and information did the Board rely on to determine that acquiring the fee title to the property was necessary for public necessity?

A.   The fact that the -- in order to fulfill PGE's obligations under the FERC license, we needed to maintain possession and control of all the property within the FERC boundary.

Q.   And what is your understanding of why PGE

Exhibit 11
Page 6 of 14

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

needs to maintain possession and control over all property within the FERC boundary?

A.    It comes from the wording of the FERC license, and from what I have been told by FERC counsel as to PGE's obligations under the licensing.

Q.    So I want to just recap a little bit.  You said that the Board relied on information and facts that it needed to -- or I'm sorry.

Was the Board's belief that it owned the property and needed to control the property the facts that it relied on in determining that it needed the property for its -- sorry, I'm getting very wordy.  Let me stop and back up.

You mentioned that PGE believed it owned the property, is that correct?

A.    Correct.

Q.    And that is one of the factors that the Board relied on in pursuing condemnation, is that correct?

A.    Yes.  But they're not mutually exclusive.

Q.    What do you mean by that?

A.    You don't need to own property to condemn it.  Typically, it's the opposite.

Q.    So I guess I'm unclear.  What factor did the Board's belief that PGE owned the property play

Exhibit 11
Page 7 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

required for Grand Ronde's Registration?

A.    Yes.

Q.    And on what basis has PGE formed that belief?

A.    Advice from legal counsel.

Q.    Okay.  I have no other questions.

MS. D'AQUILA:  Did you have any questions?

MR. HAYNIE:  I do have just a few questions.

THE DEPONENT:  Do these go back to you?  I think they're in order.

THE REPORTER:  Thank you.

THE DEPONENT:  You're welcome.  No guarantees.

EXAMINATION

BY MR. HAYNIE:

Q.    Mr. Lindley, I have a few questions for you this afternoon.

A.    Okay.

Q.    I'm going to bounce around a little bit. It will take far shorter than Ms. D'Aquila.  Has the State of Oregon asserted an ownership interest in what we've been calling the platform area?

A.    Yes.

Q.    And has PGE agreed with the State's

NAEGELI
DEPOSITION & TRIAL
(800)528-3335
NAEGELIUSA.COM

Exhibit 11
Page 8 of 14

Case 3:22-cv-00533-SI   Document 69-11   Filed 09/13/24   Page 9 of 14

Mark Lindley   April 18, 2023   NDT Assgn # 64210   Page 131

assertion of an ownership interest?

A. No.

Q. Is one of the objectives of this condemnation proceeding to resolve any question about who should be material owner of the property?

A. Yes.

Q. And are there multiple objectives potentially for this condemnation proceeding?

A. No. It's to resolve the title to the property.

Q. And once PGE -- let's assume that PGE is successful in this proceeding, and acquires fee title to the fishing platform area. What is PGE's intention moving forward with respect to cultural practices in the area?

A. To go back to FERC and get the Non-Project Use of Project Lands application approved, and then to make the PCPE available to all the tribes that want it.

Q. Does PGE desire to facilitate use of the platform area for cultural practices?

A. Yes.

Q. And PGE has in fact applied to FERC to obtain this Cultural Practices Easement, correct?

A. Yes.

Exhibit 11
Page 9 of 14

NAEGELI
DEPOSITION & TRIAL   (800)528-3335   NAEGELIUSA.COM

Q.    And was that request to FERC accepted or denied?

A.    It was, I don't know if denied is the right term, but FERC chose not to rule on it until the ownership interest of the underlying property was resolved.

Q.    And is this condemnation proceeding an effort to resolve that question?

A.    Yes.

Q.    Does PGE intend to reapply for Cultural Practices Easement, or something like that, following a resolution of this proceeding, should it be successful?

A.    Yes.

Q.    Now, does PGE believe that it owns the platform area?

A.    Yes.

Q.    Is that position disputed by the State of Oregon to your understanding?

A.    Yes.

Q.    I'd like to go back to a couple of Exhibits.  Do you have the Exhibits Ms. D'Aquila showed you?

A.    Yeah.

Q.    If you can go to Exhibit 6, please.

Exhibit 11
Page 10 of 14

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

condemnation decision by the Board of Directors.  Do you recall that?

A.   Yes.

Q.   Can you just provide a discussion generally about the department within PGE that was primarily involved in leading the discussion around pursuit of the condemnation remedy?

A.   Legal, department other than legal?

Q.   Well, you tell me.  What departments within PGE were involved in the condemnation decision?

A.   Primarily my department, as it morphed through that time period.  So me, and legal.  As well as Westside Hydro, which Nick's in charge of, and runs the facility.

Q.   And did those departments have discussions with the legal department before the Board meeting that led to the Resolution to authorize a condemnation remedy?

A.   Yes.  And I'll also add our Government Affairs group, sorry, were also participating in that.  But yes, they all had discussions with legal.

Q.   The question of safety and operations came up a few times in your deposition today.  And I know as we sit here in the moment, we're about ready to

Exhibit 11
Page 11 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

transition to another witness, Mr. Loos.  Is your understanding that Mr. Loos is PGE's designated witness to speak to questions of safety and operations in and around the fishing platform?

A.    Yes.

Q.    And the dam as a whole?

A.    Yes.

Q.    And with respect to any particular question of safety and operations, would you generally defer to Mr. Loos?

A.    Absolutely.

Q.    As between you and Mr. Loos, who is the better authority from PGE on questions of safety in and around the fishing platform?

A.    Nick Loos.

Q.    And how about operations in and around the fishing platform?

A.    Nick Loos.

Q.    And how about safety or operations just generally at Willamette Falls?

A.    Nick Loos.

Q.    Could you turn to Exhibit 8?

A.    8?

Q.    Yes.

A.    Okay.  Do you recall Exhibit 8 was the

Exhibit 11
Page 12 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

further, and asked the Grand Ronde to help PGE solve, or resolve some of the concerns of the other tribes as they were raised.

Q.    Just a couple more questions.  Going back to the Cultural Practices Easement, what would you say is PGE's objective in pursuing the Cultural Practices Easement concept with FERC?

A.    Well, the goal is to, it can be a fine line at times, but to be able to abide by our FERC license obligations, and to also provide access and the opportunity for the tribes to exercise their cultural practices there onsite.

And, you know, to the extent that FERC says we have to get approval, we have to get approval, but our efforts are in trying to provide, you know, equitable access to all the tribes to exercise their cultural practices there.

Q.    Thank you.  No further questions.

A.    You're welcome.

MS. D'AQUILA:  I have a few for redirect.

FURTHER EXAMINATION

BY MS. D'AQUILA:

Q.    Mr. Lindley, this Robert Fletcher at FERC that your outside counsel spoke to, when was that?

A.    I'd have to ask our outside counsel.  I

Exhibit 11
Page 13 of 14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

CERTIFICATE

I, Chelsy M. Jackson, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 8th day of May, 2023.

_____

Chelsy M. Jackson

Exhibit 11
Page 14 of 14