VitalLaw®



## 166 FERC to 187 FERC, Portland General Electric Company, Project No. 2233-103, 181 FERC ¶62,061, FERC (Federal Energy Regulatory Commission), (Oct. 25, 2022)

166 FERC to 187 FERC
Project No. 2233-103
166 FERC to 187 FERC ¶62,061

Click to open document in a browser

p. 64,136

Portland General Electric Company,

Project No. 2233-103

Order Dismissing Application Without Prejudice

October 25, 2022

Robert J. Fletcher, Land Resources Branch, Division of Hydropower Administration and Compliance.

1.   On April 16, 2021, Portland General Electric (PGE), licensee for the Willamette Falls Hydroelectric Project (Willamette Falls Project), [1] filed an application requesting Commission authorization to grant a Perpetual Cultural Practices Easement for Non-Project Use of Project Lands (Easement) to any requesting federally recognized Native American Tribe to conduct ceremonial fishing. The project is located on the Willamette River in Clackamas County, Oregon.

### I. Background

2.   The project boundary at the Willamette Falls Project includes lands at and surrounding Willamette Falls. [2] Several Tribes hold deep cultural connections to the land, waters, flora, and fauna at Willamette Falls. These Tribes view ceremonial fishing and lamprey gathering activities at Willamette Falls as vital and essential cultural practices. PGE states that it recognizes and respects the important cultural connections between the Tribes and project lands, and therefore it seeks to accommodate and support these practices by providing federally recognized Tribes with access to certain project lands.

3.   Article 412 of the license allows PGE to grant permission for the use and occupancy of project lands and waters for minor activities, without prior Commission approval, as long as such uses are consistent with the purposes of protect

p. 64,136
p. 64,137

ing and enhancing the scenic, recreational, and environmental values of the project. PGE states that its proposed Easement is consistent with project purposes; however, because the proposed Easement is outside the scope of Article 412 of the license, PGE must obtain Commission authorization to allow the proposed non-project use of project land.

### II. Application

4.   PGE proposes to grant an Easement on lands within the project boundary to any requesting federally recognized Tribe, including the Confederated Tribes of the Grand Ronde Community of Oregon (Grand Ronde), the Confederated Tribes of Siletz Indians (Siletz Tribe), the Confederated Tribes of the Umatilla Indian Reservation (CTUIR), the Confederated Tribes of the Warm Springs Reservation of Oregon (Warm Springs Tribes), and the Confederated Tribes and bands of the Yakama Nation (Yakama Nation). The proposed Easement would grant rights to any requesting federally recognized Tribe to access designated areas within

© 2024 CCH Incorporated and its affiliates and licensors.
All rights reserved.

Sep 13, 2024 from VitalLaw®

Exhibit 13D
Page 1 of 4



the project boundary to harvest Pacific lamprey, Chinook salmon, and hatchery summer steelhead. The Easement would also permit each Tribe to deploy removable fishing platforms and to conduct associated required geotechnical and engineering tasks, in accordance with cultural preferences of each respective Tribe. PGE states that it has been in discussions with the Grand Ronde, Siletz Tribe, CTUIR, Warm Springs Tribes, and Yakama Nation for several years regarding access to lands within the project boundary to allow ceremonial fishing and lamprey gathering.

5.    The Easement would allow each participating Tribe identical, non-exclusive access to lands within a designated area of the project boundary. Any fishing platforms would be deployed at agreed upon locations at Willamette Falls within the project boundary. PGE notes that while the Easement would grant Tribes access to the designated areas, the actual harvesting of lamprey, salmon, and steelhead would be subject to tribal, federal, and state treaties, laws, and regulations. Additionally, PGE states that the Easement would not interfere with the project's operations and maintenance.

6.    PGE notes that in 2016, while discussions concerning access to project lands for traditional cultural activities were occurring, the Oregon Fish and Wildlife Commission authorized the Grand Ronde to conduct ceremonial fishing of salmon and steelhead at the base of Willamette Falls below the T.W. Sullivan development. In 2018, Oregon Department of State Lands (Department of State Lands) issued a Waterway Registration to the Grand Ronde permitting the Tribe to erect a fishing platform at the base of Willamette Falls. PGE appealed the Waterway Registration, stating that the Waterway Registration is invalid because PGE, and not the state of Oregon, owns the lands as part of the project site. That appeal is still pending. [3] Subsequently, the Grand Ronde deployed a fishing platform at the base of Willamette Falls to conduct ceremonial fishing. PGE states that it notified the Grand Ronde that the Tribe was trespassing on project lands. PGE asserts in its application that following these events, it continued to discuss access to project lands with the Grand Ronde, Siletz Tribe, CTUIR, Warm Springs Tribes, and Yakama Nation, leading to its filing with the Commission its Easement application.

7.    In its application, PGE also included a request that the Commission designate it as non- federal representative to initiate section 106 consultation with the Oregon State Historic Preservation Officer (SHPO) under the National Historic Preservation Act (NHPA) [4] and as non-federal representative for the purpose of informal consultation with the National Marine Fisheries Service (NMFS) and U.S. Fish and Wildlife Service (FWS) under section 7 of the Endangered Species Act (ESA). [5]

### III. Comments and Consultation

8.    On April 28, 2021, Commission staff issued a letter order designating PGE as its non-federal representative to initiate section 106 consultation under the NHPA. On July 21, 2021, Commission staff issued a letter order designating PGE as its non-federal representative for section 7 of the ESA. PGE's consultation with the SHPO, NMFS, and FWS is ongoing.

9.    Commission staff issued a letter on February 24, 2022, requesting PGE to provide a status update of its studies and consultation. PGE responded on March 4, 2022, indicating that it planned to submit a final ethnographic study report and a draft biological evaluation (BE) under section 7 of the ESA by July 1, 2022. On July 1, 2022, PGE submitted an ethnographic study documenting potential adverse effects to the historic Willamette Falls traditional cultural property. [6] The filing includes comments from the Grand Ronde, Siletz Tribe, CTUIR, Warm Springs Tribes,

p. 64,137

p. 64,138

Yakama Nation, and the Nez Pierce Tribe. In that filing, PGE stated that it intends to review the analysis and recommendations, compare those to the current draft of the Easement, develop a finding of effect associated with the proposed Easement, and file its finding of effect with the Commission, Tribes, and SHPO for review and concurrence by December 31, 2022. On August 1, 2022, and September 30, 2022, PGE requested additional

© 2024 CCH Incorporated and its affiliates and licensors. All rights reserved.



extensions of time to submit its draft BE, stating that NMFS requested additional time to consult with affected Tribes.

## IV. *Discussion and Conclusion*

10.   In its application, PGE states that it owns the lands where the ceremonial fishing would take place; however, as noted above, the Oregon Department of State Lands also states that it owns the subject lands underlying the Willamette River, and that the question of ownership of the subject lands is pending an administrative appeal.

11.   In its various filings since filing the Easement application, PGE has demonstrated substantial progress in developing studies and information that will be useful for the SHPO and Tribes to comment on as it relates to the proposal, including the completion of an ethnographic study documenting potential adverse effects to the historic Willamette Falls traditional cultural property and a biological evaluation considering the effects of the proposed Easement on ESA-listed species. However, PGE's consultation with the SHPO, NMFS, and FWS is still ongoing and could potentially result in recommendations regarding PGE's Easement proposal that would need to be addressed.

12.   At this time, Commission staff does not have sufficient information and a complete consultation record to process PGE's application. Given the ongoing litigation regarding land ownership, the record is unclear as to whether PGE currently has the rights to convey the proposed Easement. Further, PGE has indicated that it is continuing efforts to consult with the appropriate natural resource agencies under section 7 of the ESA and section 106 of the NHPA. Depending on the results of this ongoing consultation, PGE may need to make changes to its Easement proposal.

13.   PGE's application, therefore, should be dismissed, without prejudice, to allow PGE additional time to resolve disputes regarding land ownership and conduct additional consultation to develop the record needed to support such an application for Commission approval. Accordingly, PGE's August 1, 2022, and September 30, 2022 requests for extensions of time to file a draft biological evaluation under section 7 of the ESA is moot given the dismissal of the April 16, 2021 application and should also be dismissed.

*The Director orders*:

(A) Portland General Electric Company's April 16, 2021 filing requesting that the Commission authorize it to grant a Perpetual Cultural Practices Easement for Non-Project Use of Project Lands within the Willamette Falls Hydroelectric Project No. 2233 project boundary is dismissed, without prejudice.

(B) Portland General Electric Company's August 1, 2022, and September 30, 2022 requests for extensions of time to submit a draft biological evaluation under section 7 of the Endangered Species Act is dismissed.

(C) This order constitutes final agency action. Any party may file a request for rehearing of this order within 30 days from the date of its issuance, as provided in section 313(a) of the Federal Power Act, 16 U.S.C. §825 *l*, and the Commission's regulations at 18 C.F.R. §385.713 (2021). The filing of a request for rehearing does not operate as a stay of the effective date of this order, or of any other date specified in this order. The licensee's failure to file a request for rehearing shall constitute acceptance of this order.

---

### Footnotes

1   Order Approving Settlement and Issuing New License ( 113 FERC ¶62,186), issued December 8, 2005.

2   As licensed, the project consisted of two developments: the T.W. Sullivan development and the Blue Heron Paper Company (BHPC) development. Article 301 of the license required PGE to file a decommissioning plan for the BHPC development. PGE filed the plan on April 4, 2006, Commission staff subsequently approved it in the Order Approving In- Place Decommissioning Plan for the Blue Heron Paper Company Powerhouse Required by Article 301 ( 116 FERC ¶62,077), issued July 28, 2006, and PGE subsequently removed the BHPC development.

© 2024 CCH Incorporated and its affiliates and licensors. All rights reserved.



3    On May 10, 2021, the Department of State Lands filed a comment stating that the state of Oregon owns the submerged and submersible lands underlying the Willamette River. The Department of State Lands letter further notes that the registration issued to the Grand Ronde to erect a fishing platform at the base of Willamette Falls is valid but that the state's ownership of the property is subject to an administrative appeal.

4    54 U.S.C. §306108.

5    16 U.S.C. §1536(a).

6    On August 3, 2022, the Grand Ronde provided comments on the ethnographic study, noting concerns with the Easement proposal and stating that it concurs with the finding that the implementation of the Easement would result in an adverse effect. On August 15, 2022, the Siletz Tribe filed comments in response to the ethnographic study, noting its support for the proposed Easement; however, the Tribe provided feedback and concerns on the ethnographic study.

© 2024 CCH Incorporated and its affiliates and licensors. All rights reserved.