# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY,** an Oregon corporation, | Case No. 3:22-cv-533-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STATE OF OREGON**, by and through **THE OREGON DEPARTMENT OF STATE LANDS**, and +/- **FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON**, | |
| Defendants, | |
| and | |
| **CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON**, a federally recognized Indian tribe, | |
| Intervenor-Defendant. | |

Erick J. Haynie, Christopher W. Rich, and Megan K. Houlihan, PERKINS COIE LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209. Of Attorneys for Plaintiff.

Shaunee Vanessa Morgan, Assistant Attorney General, and Christina L. Beatty-Walters, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendant State of Oregon.

Kimberly S. D'Aquila, TRIBAL ATTORNEY'S OFFICE, Confederated Tribes of Grand Ronde, 9615 Grand Ronde Road, Grand Ronde, OR 97347; and Richard Roos-Collins, WATER AND POWER LAW GROUP PC, 2140 Shattuck Avenue, Suite 801, Berkeley, CA 94704. Of Attorneys for Intervenor-Defendant Confederated Tribes of Grand Ronde.

Craig J. Dorsay, Lee Ann Easton, Kathleen M. Gargan, and Corin La Pointe-Aitchison, DORSAY & EASTON LLP, 1737 NE Alberta Street, Suite 208, Portland, OR 97211. Of Attorneys for Amicus Confederated Tribes of Siletz Indians.

**Michael H. Simon, District Judge.**

Portland General Electric Company ("PGE") brings this lawsuit against the State of Oregon, asserting eminent domain under Section 21 of the Federal Power Act ("FPA") over approximately five acres of land. The Confederated Tribes of Grand Ronde ("Grand Ronde") intervened as a Defendant, arguing that PGE lacks legal authority based on the specific facts in this case. PGE and Grand Ronde cross-moved for summary judgment. For the reasons stated below, the Court denies Grand Ronde's motion (ECF 66) and grants in part and denies in part PGE's motion (ECF 68).

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's

case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"When cross-motions for summary judgment are at issue, [courts] evaluate 'each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (quoting *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las*

*Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

PGE has operated the hydroelectric generation project at issue ("Project") on the Willamette River at Willamette Falls ("Falls") for more than 100 years. PGE first received a license under the FPA in 1960. *Portland General Electric Co., Crown Zellerbach Corp., & Publishers' Paper Co.*, 23 F.P.C. 831 (1960). In 2005, the Federal Energy Regulatory Commission ("FERC") issued a new license to PGE. *Portland General Electric Co.*, 113 FERC ¶ 62186 (2005). For more than a century, Native American tribes in the area have engaged in ceremonial activities, including fishing, at the Falls.

In April 2016, the Oregon Fish and Wildlife Commission ("FWC") adopted an administrative rule authorizing Grand Ronde to harvest a limited number of salmon and steelhead at the Falls for ceremonial purposes. Or. Admin. R. 635-041-0610. PGE discussed this rule internally before the FWC adopted it, but PGE did not submit any comments or objections to the proposed rule. Lindley 30(b)(6) Tr. 48:4-25, 51:22-25 (ECF 67-1 at 6-7). In late 2016, Grand Ronde submitted a Special Use Application ("Application"), seeking a lease from the Oregon Department of State Lands ("DSL") to allow Grand Ronde to construct a fishing platform at the Falls at one of two proposed locations. After PGE reviewed the Application, PGE submitted a comment to DSL suggesting implementation of a safety plan for ceremonial fishers.

*Id.* at 67:13-68:25. On August 31, 2018, DSL issued a registration that authorized Grand Ronde to access and use a portion of the Falls for a fishing platform ("Platform Registration"). ECF 70-10.

Beginning in 2018 and continuing to the present day, other tribes in the area expressed concerns to PGE about the Platform Registration issued by DSL to Grand Ronde. *See* Lindley 30(b)(6) Tr. 142:13-19 (ECF 67-1 at 22). These concerns mainly seek to ensure equal access to the fishing area at the Falls for all tribes. *Id.* at 143:2-144:3. On December 14, 2018, PGE filed a request for a contested case hearing before the Director of DSL, asserting that DSL improperly issued the Platform Registration. *See* ECF 69-9. PGE's appeal went before Administrative Law Judge ("ALJ") Alison Webster, who in May 2019 stayed the administrative proceeding to allow the parties to pursue mediation. ECF 69-10. The mediation continued for about two years but ultimately was unsuccessful when DSL and Grand Ronde withdrew from mediation in May 2021. Lindley Decl. ¶ 23 (ECF 70) (Declaration of Mark Lindley, Senior Principal in PGE's Finance Department).

On April 16, 2021, PGE filed with FERC an application for a "Non-Project Use of Project Lands," requesting FERC's approval for PGE to grant a Perpetual Cultural Practices Easement ("PCPE") to all federally recognized tribes for ceremonial fishing. ECF 70-12. FERC rejected PGE's request, stating that the DSL asserted state ownership of the land over which PGE sought to grant the easement. ECF 70-14. PGE then asked its Board to authorize condemnation of about five acres of land ("Condemnation Property"), consisting of a portion of the area in which the Project was operating plus some additional land outside PGE's designated project boundary as shown in PGE's FERC license. *See, e.g.*, ECF 70-5; ECF 83-1 at 43. On July 28, 2021, PGE's Board authorized PGE to seek condemnation and adopted a resolution

("Condemnation Resolution") declaring that fee title to the Condemnation Property is "necessary" for PGE to maintain compliance with its license and for the safe and efficient operations of the Project. ECF 72-1. PGE offered DSL $150,000[1] for the Condemnation Property. Lindley Decl. ¶ 26. DSL did not accept PGE's offer. On April 8, 2022, PGE filed its complaint in this action, asserting eminent domain over the Condemnation Property.

Grand Ronde intervened as a Defendant (ECF 13) and answered PGE's complaint (ECF 21). Among other things, Grand Ronde asserts affirmative defenses of bad faith, laches, lack of necessity, and failure to exhaust administrative remedies. *Id.* The Confederated Tribes of Siletz Indians ("Siletz") also moved to intervene as Plaintiffs. ECF 23. Although the Court denied that motion, it allowed Siletz to participate in this case as an amicus curiae. ECF 33.

Now pending before the Court are Grand Ronde and PGE's cross motions for summary judgment. ECF 66, 68. Siletz filed an amicus brief in support of PGE's motion. ECF 73. The State of Oregon does not dispute PGE's determination of necessity but objects to PGE's description of the property as "insufficient to clearly delineate its boundaries." ECF 76.

## DISCUSSION

PGE argues in its motion that there is no dispute that the Condemnation Property is both necessary and appropriate for the maintenance and operation of its Project. Grand Ronde responds that PGE acted arbitrarily, capriciously, and in bad faith in making its condemnation decision, a conclusion that PGE disputes. PGE also asserts that there is no issue of fact regarding

---

[1] PGE also notes that with its offer of $150,000, it provided an appraisal, and DSL does not dispute before this Court that $150,000 is the fair market value of the land at issue.

Grand Ronde's affirmative defenses.[2] Grand Ronde primarily argues in its motion that PGE's taking is not "necessary" for the operation of the Project. Instead, Grand Ronde argues that PGE acted in bad faith, and thus lacks a statutory basis for condemnation under Section 21 of the FPA.[3] In their motions, the parties dispute the standards of review and the scope of eminent domain authority under Section 21. The Court first addresses these threshold disputes before turning to the merits of the parties' respective motions for summary judgment.

**A.  Standard of Review of Condemnation Decisions under Section 21**

PGE's sole authority to condemn land in this action is found in Section 21 of the FPA, 16 U.S.C. § 814, which provides, in relevant part:

> *When any licensee cannot acquire by contract or pledges* an unimproved dam site or the right to use or damage the lands or property of others *necessary to the construction, maintenance, or operation of any dam*, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with any improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, *it may acquire the same by the exercise of the right of eminent domain* in the district court of the United States for the district in which such land or other property may be located, or in the State courts.

16 U.S.C. § 814 (emphases added).

---

[2] Because the affirmative defenses of bad faith and lack of necessity largely overlap with the merits of PGE's claim, the Court does not separately address these elements in assessing this aspect of PGE's motion against Grand Ronde's affirmative defenses.

[3] Neither party addresses the requirement under the FPA that eminent domain must be exercised "in conjunction with any improvement which in the judgment of [FERC] is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate and foreign commerce." 16 U.S.C. § 814. The Court therefore does not decide whether this condition is satisfied.

The Court's review of a licensee's determination that condemnation under Section 21 is "necessary" is limited to whether the licensee's determination of necessity was "arbitrary, capricious, or made in bad faith." *Chapman v. Pub. Util. Dist. No. 1 of Douglas Cnty.*, 367 F.2d 163, 167-68 (9th Cir. 1966). A determination of necessity under Section 21 is "'arbitrary and capricious' only if it 'was without adequate determining principle or was unreasoned.'" *Id.* at 168 (quoting *United States v. Carmack*, 329 U.S. 230, 243 (1946)).

Grand Ronde argues that *Chapman* did not address the scope of judicial review concerning the *purpose* for condemnation because it was not at issue in the case. Accordingly, Grand Ronde contends that a court is empowered to search for the "true" purpose of an alleged taking. *See Brinkmann v. Town of Southold*, 96 F.4th 209, 216 (2d Cir. 2024). PGE responds that the Second Circuit in *Brinkmann* rejected a "pretext limitation" on the takings power, and stated that the proper test is whether "the project bears at least a rational relationship to well-established categories of public uses." *Id.* at 214 (cleaned up). In *Brinkmann*, however, the Second Circuit emphasized that the taking was authorized by local legislators and that "Supreme Court precedent wisely forecloses inquiry into whether a government actor had bad reasons for doing good things." *Id.* Here, the condemnation decision was made by a private actor, and there is no such limitation on investigating a private actor's true motive.

In *Brinkmann*, the Second Circuit also distinguished between the Takings Clause of the U.S. Constitution and eminent domain power pursuant to a statute or other delegated authority. *See id.* at 216-17. Under delegated authority, "where state takings are subject to statutes that prescribe uses and evidentiary standards, the courts have a role to play." *Id.* at 216. Similarly, in considering whether PGE's determination of necessity was made in bad faith, the Court, acting under *Chapman*, also may consider whether PGE's stated reasons for necessity were pretextual.

**B.  Eminent Domain Authority under Section 21**

As noted, when the power of eminent domain has been delegated by statute to a non-governmental entity, courts have a role to play in ensuring that the scope of the statutory grant has not been exceeded. Such statutes are, by their very nature, grants of limited powers that may not exceed the powers expressed or necessarily implied. *Carmack*, 329 U.S. at 243 n.13; *see also Brinkmann*, 96 F.4th at 216. Further, statutes conferring eminent domain authority are to be "strictly construed to exclude those rights not expressly granted." *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 550 F.3d 770, 774 (9th Cir. 2008). From this, it follows that the grant of authority to condemn for specific purposes must be construed as limited to the enumerated purposes. *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 826 (4th Cir. 2004).

Grand Ronde argues that PGE's eminent domain authority under Section 21 extends only to land within PGE's project boundary, as defined by its FERC license. PGE responds that the text of Section 21 makes no reference to a project boundary and thus does not limit its exercise of eminent domain.[4]

The Court finds two out-of-circuit cases persuasive in analyzing the condemnation power under Section 21. In *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459 (7th Cir. 2008), the Seventh Circuit upheld a district court's decision that granted a power company eminent domain over land outside its project license. The project license specifically applied to an existing concrete powerhouse, a trash rack, one channel of a river, and appurtenant facilities. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Corp.*, 2004

---

[4] PGE also states that the fishing platform site is the only area over which Grand Ronde asserts an interest and is wholly within the project boundary. Thus, PGE argues, it is authorized to condemn the lands in which Grand Ronde asserts an interest. Grand Ronde replies that it also holds significant interests on the east side of the property, which is outside the project boundary.

WL 2931293, at *2 (N.D. Ill. Dec. 10, 2004). The district court held and the Seventh Circuit

affirmed that the power company was allowed to declare eminent domain over the other channel

of the river—land that was not included within the project boundary—based on a claim of

project "necessity." *Marseilles*, 518 F.3d at 461, 466-67.

 Similarly, in *Feltz v. Central Nebraska Public Power & Irrigation District*, 124 F.2d 578

(8th Cir. 1942), the Eighth Circuit explained:

> It is apparent that there are no words of [Section 21] which relate
> in express terms to the problem presented when the development
> of a project necessitates the removal of such utilities as railroads,
> highways, streets, or alleys that lie within the project area *and the*
> *relocation of the same outside of the project area* where their use
> and service to the public may be continued.

*Id.* at 582 (emphasis added); *see also id.* ("[T]he District's position is that its relocation of the

Highway out of the project basin was so closely and actually incidental to its work of public

improvement that the taking and damaging of appellants' lands must be deemed to have been

done 'in conjunction with an improvement' within the meaning of the Act and was therefore

authorized by the Act."). Thus, the Eighth Circuit upheld the company's authority to condemn

land outside the project boundary under Section 21. *Id.* Based on the plain text of Section 21 and

the persuasive guidance of other circuits, the Court finds that Section 21 authorizes

condemnation of land outside a project boundary, provided that the condemnation is necessary

for the construction, maintenance, or operation of the licensed project and is in conjunction with

any improvement that is in the public interest for the described statutory purpose.

## C.  PGE's Motion for Summary Judgment

 PGE moves for summary judgment on its own claim and against Grand Ronde's

affirmative defenses. PGE argues that it made a valid determination that condemnation was

necessary for the operation and maintenance of the property based on safety concerns. Grand

Ronde responds that PGE's condemnation decision was arbitrary and capricious and, alternatively, made in bad faith.

Condemnation under Section 21 is authorized only when a "licensee cannot acquire by contract or pledges" the necessary land. PGE and DSL could not agree on a sale of the Condemnation Property, even after two years of mediation between PGE, DSL, and Grand Ronde. The Court thus finds that this element of Section 21 is satisfied and turns to the analysis of PGE's determination of necessity and Grand Ronde's affirmative defenses. As noted, PGE's determination of necessity is valid unless it was arbitrary and capricious or made in bad faith.

### 1. Arbitrary and Capricious

Grand Ronde argues that PGE's condemnation decision was made without any meaningful input or evidence substantiating the need for condemnation. PGE does not directly argue that its condemnation decision was not arbitrary and capricious but argues that the Condemnation Resolution was well reasoned. In opposing PGE's motion, Grand Ronde cites the materials provided to PGE's Board before its meeting on condemnation and argues that none of these materials discuss safety or operational concerns. Grand Ronde argues that the only evidence that PGE provides that its Board ever considered safety and operational concerns are the declarations of two PGE employees, which Grand Ronde contends are insufficient and also merely post-hoc justifications. *See* Lindley Decl.; Loos Decl. (ECF 71) (Declaration of Nick Loos, PGE's current Senior Manager of Transmission Delivery, Director of Dam Safety and Renewable Operations from 2018 to 2024, and West Side Hydro Plant Manager before 2018).

The Lindley Declaration references the necessity of condemnation only once, and only in reference to PGE's future intentions for the property. *See* Lindley Decl. ¶ 31 ("PGE intends to continue using the Condemnation Property for various project-related purposes, including facility management and control, hydroelectric generation, and compliance with all of PGE's

various obligations under its FERC license that relate to or involve the Condemnation

Property."). The Loos Declaration more substantially lays out the "significant public safety and

hydroelectric operational hazards" and operational requirements involving the Condemnation

Property. Loos Decl. ¶¶ 4-5, 8. Mr. Loos also describes his safety concerns about fishing at the

Falls, memorialized in internal emails from 2017. *Id.* ¶ 7.

PGE responds that the Condemnation Resolution was based on substantial evidence and

was reasoned. The Condemnation Resolution states that the Board "consulted with the

Company's legal counsel and its subject matter experts in real estate and engineering as well as

those concerned with the operation and maintenance of the Project." ECF 72-1 at 11. PGE also

stated in response to interrogatories that its Board received attorney-client privileged

communications from its then Vice President, General Counsel, and Corporate Compliance

Officer, Lisa Kaner, in advance materials before the meeting. ECF 83-5 at 3. This evidence,

although vague, lends some support to the contention that the Condemnation Resolution was a

reasoned decision. In addition, PGE argues that the ownership dispute is itself sufficient to

support PGE's condemnation determination because the Condemnation Resolution stated that

ownership of the Condemnation Property is critical "to maintain compliance with the FERC

License," including the license's mandate for "the safe and efficient operation of the Project."

ECF 72-1 at 11.

Further, PGE presents evidence from 2017 and 2018 to corroborate that Mr. Lindley and

Mr. Loos were concerned with the Project's safety or operations at the time of the condemnation

decision. *See* ECF 70-8 at 25 (September 2018 letter from PGE's General Counsel discussing

"PGE's safety, security, and operational concerns" and "legal obligations" in context of Grand

Ronde's fishing platform); ECF 71-2 at 1-2 (email thread in May 2017 including Mr. Loos,

noting that the Condemnation Property is "extremely dangerous with unpredictable flow," "out of [PGE's] control," along with a PGE employee noting that he is "not in favor of creating a hazard for members of the public"); ECF 84-5 (August 2018 letter from two of PGE's vice presidents, noting "PGE's operational and safety concerns at the falls").

Drawing all reasonable inferences in favor of Grand Ronde, as the Court must do at this stage of the lawsuit when considering PGE's motion for summary judgment, there is a genuine dispute of fact about whether PGE's condemnation decision was arbitrary and capricious. Although PGE presents evidence of safety and operational concerns, it offers scant, if any, evidence that its Board was aware of these concerns *and considered them* when adopting the Condemnation Resolution. Thus, Court denies PGE's motion for summary judgment that its decision was not arbitrary and capricious.

### 2. Bad Faith, Part I (Pretext)

Similarly, Grand Ronde argues that PGE's Condemnation Resolution was not made for operational or maintenance reasons but was done to acquire fee title to engage in non-project use of the Condemnation Property, and thus PGE's decision was made in bad faith. Grande Ronde contends that the assertion that the condemnation decision was "necessary" for the maintenance or operation of the Project, as required by Section 21, is pretextual, including because it was untimely. PGE responds that Grand Ronde's Platform Registration created "substantial operational and public safety risks," such that PGE's ownership of the Condemnation Property became necessary for its safe operation of the Project and that the Board made the decision based on operational and safety concerns.[5]

---

[5] PGE also argues that its consideration of other tribes' interests in its condemnation decision is consistent with the goals of the FPA, FERC regulations, and PGE's FERC license,

PGE provides various pieces of evidentiary support for its argument that the Board

decision was not pretextual. First, PGE offers internal emails from December 2016 that include

the comment submitted by PGE in response to Grand Ronde's Application, in which PGE stated:

> The project would be acceptable if the project is changed or
> altered . . . . PGE requests that DSL include in the lease a
> requirement for [Grand Ronde] to develop, subject to PGE
> approval/concurrence, a Ceremonial Harvest Safety Plan that
> describes measures that will be in place to ensure the safety of
> Ceremonial Fishers and notification/communication protocols.

ECF 67-1 at 50. Similarly, PGE cites its internal emails from 2017, previously discussed, that

contain comments from PGE employees that the Condemnation Property is extremely dangerous

and could create a hazard for the public. *See* ECF 71-2 at 1-2. In addition, in the 2017 email

thread, Mr. Loos, the West Side Hydro Plant Manager at that time, stated that PGE had "avoided

granting permission for the tribes to access the falls in the past, mainly to avoid the conflict

between the tribes and the State." *Id.* at 1.

Second, PGE presents a letter that it sent to DSL on August 29, 2018, requesting

DSL decline to grant Grand Ronde's Application because "PGE has significant concerns

regarding the proposed platforms, most notably for public safety, but also because the platforms

may interfere with PGE's operations of its hydroelectric project." ECF 81-5 at 1. Third, PGE

cites the Loos Declaration. Mr. Loos states that condemnation is necessary for compliance with

PGE's license obligations under the Historic Properties Management Plan, dam safety,

hydroelectric operations, and public safety. Loos Decl. ¶¶ 8(c)-(e). Finally, PGE argues that its

determination of necessity was not made in bad faith because its FERC license *requires* PGE to

---

and thus is not in bad faith. Even a laudable public purpose, however, does not create the specific
necessity that is required for condemnation under Section 21.

hold fee ownership of the Condemnation Property. In support of this argument, PGE cites a

FERC order explaining that Standard Article 5

> requires the licensee to acquire and retain all interests in non-
> federal lands and other property necessary or appropriate to carry
> out property purposes. The licensee may obtain these property
> interests by contract or, if necessary, by means of federal eminent
> domain pursuant to FPA Section 21. A licensee's property interests
> can range from fee simple to perpetual or renewable leases,
> easements, and rights-of-way.

*Wis. Pub. Serv. Corp.*, 104 FERC ¶ 61295, at *3 (2003).[6] This order, however, does not answer

the question of *whether* or *when* a property is necessary for maintenance or operations, but

merely states that if a property is necessary, then a licensee must obtain sufficient property

interests (through ownership, easements, leases, or the like).

Grand Ronde also responds that it is undisputed that the Condemnation Property has been

accessed by tribes and the public for decades, and PGE never raised safety issues before.

Accordingly, Grand Ronde contends, the "driving motivation" behind PGE's condemnation was

to offer a PCPE to all federally recognized tribes, which is not necessary for the maintenance or

operation of the Project. Further, Grand Ronde characterizes the Loos Declaration as retroactive,

or post-hoc, and self-serving and argues that neither the minutes of the PGE Board meeting nor

the text of PGE's Condemnation Resolution specifies any operational or maintenance needs or

---

[6] PGE also argues that FERC's 2022 order resolving PGE's request for a PCPE on the
Falls requires that PGE be the exclusive owner of the Condemnation Property to grant a non-
project use—the PCPE—of any portion of the property. *Portland Gen. Elec. Co.*, 181 FERC
¶ 62061, at *3 (2022) ("Given the ongoing litigation regarding land ownership, the record is
unclear as to whether PGE currently has the rights to convey the proposed Easement."). Granting
the PCPE, PGE contends, is necessary to the operation of the Project because of the safety and
operational concerns. Grand Ronde responds that FERC's order simply expressed doubt that
PGE had the necessary rights to convey the requested easement and dismissed PGE's application
without prejudice. Regardless of the proper interpretation of this order, it was issued in 2022,
well after the Board made its condemnation decision. Therefore, the text of the order is irrelevant
to PGE's determination of necessity.

license obligations. In fact, a "Benefit/Risk Assessment" of the Application completed internally by PGE shows a low likelihood—but high impact—of safety risks and low likelihood and low impact of an effect on the Project's operations. ECF 83-7 at 3. The same assessment also addresses "Potential Impacts to relationship with Warm Springs Tribe," which is PGE's business partner in another, significantly larger, hydroelectric power generation project. *Id.* at 4 (this line item instructs employees to explain if contacted by the Confederated Tribes of the Warm Springs ("Warm Springs") that "this is a project on State Lands and we are being notified as adjacent property owners"). Grand Ronde argues that this evidence shows that PGE was not, in fact, concerned about maintenance, operations, or safety, but about—or at least, primarily about— effects on federally-recognized tribes and specifically the potential effect on PGE's business relationship with Warm Springs.[7]

If the Court draws all reasonable inferences in favor of Grand Ronde, as it must at this stage, there is a genuine dispute about whether the Condemnation Property is necessary for PGE's safe operation of the Project. Although PGE submits evidence of necessity based on safety concerns, Grand Ronde provides evidence that these concerns are pretextual, as it is disputed whether PGE had genuine safety concerns and whether the Board even considered safety or operational reasons in making its decision. Thus, the Court denies PGE's motion for summary judgment on this ground.

### 3. Bad Faith, Part II (Timeliness)

Standard Article 5 of PGE's FERC license requires that PGE acquire all necessary lands within "five years from the date of issuance of the license." *Portland Gen. Elec. Co.*, 113 FERC

---

[7] PGE admits that the assertion of rights and interests by other tribes was *a* contributing factor for its request for a Non-Project Use of Project Lands but argues that it was not *the* purpose behind its condemnation decision. This is a nuanced distinction, at best.

¶ 62186, at *111 (2005). Grand Ronde contends that because PGE did not seek to acquire the Condemnation Property within five years of obtaining its license in 2005, the Condemnation Resolution is untimely, which also shows bad faith. Grand Ronde presents evidence that PGE viewed the Condemnation Property as state-owned. The map included in PGE's 2005 license identified the Condemnation Property as state-owned and not within PGE's project boundary. Lindley 30(b)(6) Tr. 39:6-19, 150:10-19, Depo. Ex. 5 (ECF 83-1 at 4, 42-43). In November 2016, a PGE employee with the title "Archaeologist/Senior Environmental Specialist – Cultural Resources and Projects" sent an internal email describing Grand Ronde's Application and stating that both proposed locations for the fishing platform "are within DSL lands." ECF 83-7 at 1. Additionally, as discussed, the chart evaluating the effects of the proposed fishing platform identified the platform as on state lands and instructed PGE employees to explain as much to Warm Springs. Moreover, Mr. Lindley, as the designated representative for PGE under Rule 30(b)(6), confirmed that PGE understood Grand Ronde's Application as seeking "approval to use *State Lands* on both sides of the river for construction of fishing platforms." Lindley 30(b)(6) Tr. 65:5-9 (ECF 83-1 at 21) (emphasis added). When asked why PGE said nothing about PGE's purported ownership when commenting on Grand Ronde's Application, Mr. Lindley responded: "That was a failure on the part of the two people that were working on it. Their focus would have been on the FERC boundary, not on property ownership." Lindley 30(b)(6) Tr. 70:12-18 (ECF 67-1 at 18).

PGE responds that condemnation did not become necessary until after DSL granted Grand Ronde's Application because of the new concerns related to State-granted rights.[8] PGE

---

[8] PGE also states that there was no dispute that it *owned* the Condemnation Property until 2016, but the Court finds a genuine issue of fact on this point. As described, the documentation in the record, including the documentation and maps in the possession, custody,

argues that until DSL granted to Grand Ronde rights to access the fishing platform and disputes arose with other tribes, the safety issues and other concerns had not risen to the level that reached operational concerns that required action by PGE. Viewing the evidence in the light most favorable to Grand Ronde, as the Court must do at this time, there is an issue of fact as to whether the timing of the application supports an inference of bad faith. Thus, the Court denies PGE's motion arguing that the timing of its application does not support a finding of bad faith as a matter of law.

### 4. Grand Ronde's Affirmative Defenses

PGE also moves for summary judgment against Grand Ronde's affirmative defenses of laches and exhaustion of administrative remedies. Grand Ronde did not respond to this argument in its response to PGE's motion.[9] At oral argument, Grand Ronde confirmed that these affirmative defenses may be dismissed. Thus, the Court grants PGE's motion for summary judgment against these two affirmative defenses.

---

and control of PGE, all described the boundaries of the Project Area and the Condemnation Property and that the State of Oregon owned much—if not all—of the property currently in dispute. The record also shows communications demonstrating that PGE knew that the property was owned by the State. PGE points to no contemporaneous evidence showing that PGE previously believed that it owned the Condemnation Property.

[9] Generally, the failure to respond to an argument on its merits is grounds for deeming that argument abandoned or conceded. *See Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession.").

### D.  Grand Ronde's Motion for Summary Judgment

Grand Ronde moves for summary judgment arguing primarily that PGE's determination of necessity was made in bad faith.[10] This motion depends on the same evidence and arguments described above. Because Grand Ronde is the movant, however, the Court must draw all reasonable inferences in favor of PGE with respect to Grand Ronde's motion. In this light, PGE has provided sufficient evidence of its consideration of safety and operational concern to create a genuine dispute of material fact as to whether its determination of necessity was made in bad faith, including whether the State-granted rights triggered new operational concerns that rendered condemnation timely. Thus, the Court denies Grand Ronde's motion in its entirety.

### CONCLUSION

For the reasons stated in this Opinion and Order, the Court DENIES Grand Ronde's motion for summary judgment (ECF 66) and GRANTS IN PART and DENIES IN PART PGE's motion for summary judgment (ECF 68). The Court grants PGE's motion for summary judgment against Grand Ronde's affirmative defenses of laches and failure to exhaust administrative remedies but denies PGE's motion as to all other claims.

**IT IS SO ORDERED**.

DATED this 3rd day of January, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[10] Grand Ronde did not argue that PGE's condemnation decision was arbitrary and capricious.