**Erick J. Haynie**, OSB No. 982482
EHaynie@perkinscoie.com
**Christopher W. Rich**, OSB No. 990954
CRich@perkinscoie.com
**Megan K. Houlihan**, OSB No. 161273
MHoulihan@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile:  +1.503.727.2222

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PORTLAND GENERAL ELECTRIC COMPANY**, an Oregon corporation;<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF OREGON**, by and through **THE OREGON DEPARTMENT OF STATE LANDS** and +/- **FIVE ACRES OF UNIMPROVED LAND ALONG THE WILLAMETTE RIVER NEAR WEST LINN, OREGON**;<br><br>Defendants,<br><br>and<br><br>**CONFEDERATED TRIBES OF THE GRAND RONDE COMMUNITY OF OREGON**, a federally-recognized Indian tribe,<br><br>Intervenor-Defendant. | Case No. 3:22-CV-00533-SI<br><br>**PLAINTIFF PORTLAND GENERAL ELECTRIC COMPANY'S CLOSING BRIEF**<br><br>Closing Argument:  May 6, 2025<br>                     1:00 PM<br><br> Judge Simon |

PGE'S CLOSING BRIEF

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

DISCUSSION OF GOVERNING LEGAL STANDARDS.....................................................2

A.    Governing Standard of Review .......................................................................2

  1.    The *Chapman* Test.................................................................2

  2.    Standards for Bad Faith, Arbitrary and Capricious Decision-Making..................3

B.    PGE is required by federal law to control in perpetuity all property necessary for its hydroelectric operations. ..........................................................................6

C.    PGE may condemn property outside of its FERC project boundary...............................7

D.    PGE has a compliance obligation under its FERC license to protect public safety.........10

E.    PGE has a compliance obligation under its FERC license to perform various other obligations within the Condemnation Property discussed at trial. .................................10

F.    The State cannot fulfill PGE's license obligations.........................................12

CONCLUSION................................................................................................12

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albanian Associated Fund v. Twp. of Wayne,*
No. CIV.A. 06-CV-3217PGS, 2007 WL 2904194 (D.N.J. Oct. 1, 2007)................................4

*Appalachian Power Co.,*
108 FERC ¶ 61,262 (2004)..............................................................................9, 11

*Appomattox River Water Auth.,*
60 FERC ¶ 61,083 (1992).........................................................................................7

*Boott Mills,*
25 FERC ¶ 61,386 (1983).........................................................................................7

*Bradley v. State, ex rel. Dept. of Forestry,*
324 P.3d 504 (Or. App. 2014)...................................................................................5

*Chapman v. Public Utility District No. 1 of Douglas County,*
367 F.2d 163 (9th Cir. 1966) .........................................................................passim

*City of Fairbanks v. Metro Co.,*
540 P.2d 1056 (Alaska 1975)....................................................................................6

*City of Holyoke Gas & Elec. Dep't,*
115 FERC ¶ 62,295 (2006)........................................................................................6

*City of Tacoma v. Welcker,*
65 Wash. 2d 677, 399 P.2d 330 (1965)....................................................................5

*Essex Cnty. Imp. Auth. v. RAR Dev. Assocs.,*
323 N.J. Super. 505, 733 A.2d 580 (Law. Div. 1999) ............................................4

*Feltz v. Central Nebraska Public Power & Irrigation District,*
124 F.2d 578 (8th Cir. 1942) ...................................................................................7

*Jehovah's Witnesses v. Mullen et al,*
214 Or. 281, 330 P.2d 5 (1958), *cert. den.,* 359 U.S. 436, 79 S.Ct. 940, 3
L.Ed.2d 932 (1959) .................................................................................................5

*Klump v. Cybulski,*
274 Wis. 604, 81 N.W.2d 42 (1957) .......................................................................4

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,*
518 F.3d 459 (7th Cir. 2008) ...................................................................................7

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Marsh Valley Hydroelectric Co.*,
    64 FERC ¶ 61,120 (1993)..................................................................................11

*Mattiza v. Foster*,
    311 Or. 1, 803 P.2d 723 (1990)...........................................................................4

*Mortg. Contracting Servs., LLC v. United States*,
    153 Fed. Cl. 89 (2021)........................................................................................6

*Motor Vehicle Mfrs. Assn. v. State Farm Mut.*,
    463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) .........................................5

*Oakland Club v. S.C. Pub. Serv. Auth.*,
    110 F.2d 84 (4th Cir. 1940) ...............................................................................8

*Radcliffe v. Franklin Nat. Ins. Co. of N. Y.*,
    208 Or. 1, 298 P.2d 1002 (1956).........................................................................4

*Rott v. City of Miami Beach*,
    94 So. 2d 168 (Fla. 1957) ...................................................................................4

*S. Pac. Land Co. v. United States*,
    367 F.2d 161 (9th Cir. 1966) ..............................................................................2

*Sierra Club v. Morton*,
    510 F.2d 813 (5th Cir. 1975) ..............................................................................6

*Solar Energy Indus. Ass'n v. FERC*,
    80 F.4th 956 (9th Cir. 2023) ...........................................................................5, 6

*State of La., Through Sabine River Auth. v. Lindsey*,
    524 F.2d 934 (5th Cir. 1975) ...........................................................................7, 8

*Swartz v. Pittsburgh Pub. Parking Auth.*,
    63 Pa. Cmwlth. 434, 439 A.2d 1254 (1981).......................................................6

*U.S., Dep't of Interior v. 16.03 Acres of Land, More or Less, Located in Rutland
Cnty., Vt.*,
    26 F.3d 349 (2d Cir. 1994) ................................................................................6

*United States v. 2,606.84 Acres of Land in Tarrant Cnty., Tex.*,
    432 F.2d 1286 (5th Cir. 1970) ............................................................................4

*United States v. 416.81 Acres of Land*,
    514 F.2d 627 (7th Cir. 1975) ..............................................................................4

iii-    TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*United States v. Carmack*,
    329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946) .................................................. 5

**STATUTES**

16 U.S.C. § 803(c) ............................................................................................................. 9

16 U.S.C. § 807 ........................................................................................................... 7, 11

16 U.S.C. § 808 ........................................................................................................... 7, 11

16 U.S.C. § 814 ............................................................................................................. 4, 8

16 USC § 823b(a) ............................................................................................................ 10

16 USC § 823b(c) ............................................................................................................ 10

Clean Water Act § 401(d), 33 U.S.C. § 1341(d) .................................................... 10, 11

Federal Power Act .................................................................................................... passim

**REGULATIONS**

18 CFR Chapter 12 ......................................................................................................... 10

18 CFR § 12.4 .................................................................................................................. 10

18 CFR § 12.20 *et seq.* .................................................................................................... 10

18 CFR § 12.60 *et seq.* .................................................................................................... 10

89 FR 1806 ....................................................................................................................... 10

**OTHER AUTHORITIES**

1A Nichols on Eminent Domain § 4.11 (2025) ................................................................ 3

Black's Law Dictionary, 170 (12th ed. 2024) .................................................................. 3

Norman Maclean, *A River Runs Through It* (1976) .......................................................... 1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Plaintiff Portland General Electric Company ("PGE") respectfully submits this memorandum of legal authorities in advance of closing arguments scheduled for May 6, 2025 at 1:00 PM.  PGE will present its factual arguments at that time, with this memorandum providing the Court with a supplemental discussion of governing legal standards.  For a further discussion of governing legal standards, PGE also refers to the Court to its trial memorandum (ECF 110) and proposed findings of facts and conclusions of law (ECF 109).

## INTRODUCTION

Norman Maclean wrote that a great river runs over rocks from the basement of time.[1] Under the rocks are the words, and some of the words are theirs. This case revolves around a set of rocks in the middle of the Willamette River, at the base of Willamette Falls, with a story all their own. The story starts thousands of years ago, with indigenous people fishing at the Falls. Someone attending this trial might be forgiven if they came away with the impression that this case was all about whether a single Native American Tribe should have access to those rocks for a fishing platform, and under what terms. But this case is actually about something else:  the conflict created when the State of Oregon stepped into the fray by asserting ownership and a jurisdictional power to grant third-parties the rights to access, occupy, and build structures within an area of Willamette Falls that has been in active use by PGE for hydroelectric operations for over 100 years.

This is a conflict because PGE's license from the Federal Energy Regulatory Commission ("FERC") requires PGE to control and operate within this area. The law is clear in that regard, as discussed below. Yet only after years of efforts to obtain such control, including through negotiation, property ownership studies, administrative appeals, two mediations, offers to lease, and offers to purchase, PGE has determined that condemnation is the appropriate remaining option to finally secure that control in satisfaction of its safety and regulatory obligations. After acquiring the necessary rights under its FERC license, PGE intends to allow

---

[1] Norman Maclean, *A River Runs Through It* (1976).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

equitable and transparent access to the area, in perpetuity and in compliance with its FERC obligations, for all interested federally recognized Northwest Tribes.

PGE hopes that at the end of this case, the rocks will tell of reconciliation and collaboration. But the issue in this case is not about PGE and Tribes reaching consensus over access to perform cultural practices—indeed, PGE remains confident we can and will do so. Rather, the real issue is what happens if the State remains in control—granting access, use, and building rights to any third parties who may request such rights, without regard for the operational, safety, and maintenance obligations imposed upon PGE (and PGE alone) by federal law.

As noted by the Court at the close of Plaintiff's case, PGE has made its prima facie case. Additionally, the State does not contest PGE's stated need to condemn the property. As a result, the only question remaining is whether Grand Ronde has sustained its heavy burden to prove that PGE's decision-making was in bad faith, or was arbitrary and capricious. Grand Ronde has not made such a showing, and PGE has not engaged in any such conduct. As shown by the trial evidence, Grand Ronde's defenses fall well short of governing legal standards, such that judgment should be entered in this matter in favor of PGE.

## DISCUSSION OF GOVERNING LEGAL STANDARDS[2]

### A.     Governing Standard of Review

#### 1.     The *Chapman* Test

The Ninth Circuit applies a deferential standard of review when reviewing the decision of a FERC licensee to exercise the condemnation authority vested by Section 21 of the Federal Power Act. *Chapman v. Public Utility District No. 1 of Douglas County*, 367 F.2d 163 (9th Cir. 1966). In *Chapman*, the Ninth Circuit established that a hydropower licensee's "determination of necessity under the federal statute [is] subject to judicial review, if at all, only to the extent of deciding whether [the licensee's] determination of necessity was arbitrary, capricious, or made in

---

[2] The balance of this brief focuses on governing legal standards. PGE intends to present its factual arguments to the Court on May 6.

2-   **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

bad faith." *Id.* at 167 (citing *S. Pac. Land Co. v. United States*, 367 F.2d 161 (9th Cir. 1966)). *Chapman* is in harmony with the widely accepted view among state and federal courts that condemning authorities are given deference in their decision-making, and that the actual reversal of a condemning authority's decision to pursue eminent domain is exceptionally rare. As one respected treatise summarized:

> While many courts have used sweeping expressions in the decisions in which they have disclaimed the power of supervising the selection of the site of public improvements, it may be safely said that the courts of the various states would feel obligated to interfere to prevent an abuse of the discretion delegated to the legislature by an attempted appropriation of land in utter disregard of the possible necessity of its use, or when the alleged purpose was a cloak to some sinister scheme. In other words, the court would interpose in a case in which it did not merely disagree with the judgment of the legislature, but felt that the body had acted with total lack of judgment or in bad faith. In every case, therefore, it is a judicial question whether the taking is of such a nature that it is or may be founded on a public necessity. But while the courts have frequently declared their power to set aside acts of the legislature upon such a ground, cases in which the power has been actually exercised seem rarely to have arisen. A federal court of appeals has held that an administrative or legislative determination of what is "necessary" for the purpose for which the land is sought is not reviewable by the courts. The court referred to the fact that the Supreme Court had left this question open. Even when judicial review of the question of necessity is based upon alleged arbitrariness or excessiveness of the taking, it has been held that by virtue of the delegation of the power of eminent domain by the state to the condemnor there is necessarily left largely to the latter's discretion the location and area of the land to be taken. And one seeking to show that the taking has been arbitrary or excessive shoulders a heavy burden of proof in the attempt to persuade the court to overrule the condemnor's judgment.

1A Nichols on Eminent Domain § 4.11 (2025).

PGE has previously discussed the governing standard of review in detail and refers the Court to prior briefing. *See* PGE Trial Memorandum (ECF 110) at 2-4; PGE's Motion for Summary Judgment (ECF 68) at 17-21.

### 2. Standards for Bad Faith, Arbitrary and Capricious Decision-Making.

#### (a) Bad Faith

*Chapman* does not define "bad faith". The term "bad faith" generally refers to conduct

involving "dishonesty of belief, purpose or motive." Black's Law Dictionary, 170 (12th ed. 2024). In other contexts, Oregon courts[3] have found "bad faith" to exist where a position taken by a party is "entirely devoid of legal or factual support," *Mattiza v. Foster*, 311 Or. 1, 8, 803 P.2d 723, 728 (1990), or where there is an "actual intent to mislead or deceive another." *Radcliffe v. Franklin Nat. Ins. Co. of N. Y.*, 208 Or. 1, 39, 298 P.2d 1002, 1019 (1956) (quoting Virginia case involving insurance).

PGE agrees with the Court that a party alleging bad faith in condemnation actions must prove that affirmative defense by clear and convincing evidence. *See Albanian Associated Fund v. Twp. of Wayne*, No. CIV.A. 06-CV-3217PGS, 2007 WL 2904194, at *6 (D.N.J. Oct. 1, 2007) ("[i]n order to set aside the condemnation action, the plaintiffs bear the burden of proving fraud, bad faith, or manifest abuse *by clear and convincing evidence*") (emphasis added); *Essex Cnty. Imp. Auth. v. RAR Dev. Assocs.*, 323 N.J. Super. 505, 516, 733 A.2d 580, 585 (N.J. Super. 1999) (noting that "[b]ad faith is referred to as the doing of an act for a dishonest purpose" and that "evidence showing that the government acted in bad faith must be *clear and convincing*") (emphasis added); *Klump v. Cybulski*, 274 Wis. 604, 612, 81 N.W.2d 42, 47 (1957) ("Judicial interference with the utility's determination would at most be warranted only by a *convincing* showing that the determination is unreasonable, arbitrary, or not made in good faith") (emphasis added).[4]

---

[3] Oregon state procedural law may be relevant by operation of Section 21 of the Federal Power Act. *See* 16 U.S.C. § 814 ("The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated").

[4] *See also United States v. 416.81 Acres of Land*, 514 F.2d 627, 632 (7th Cir. 1975) ("Only in cases of egregious bad faith will the right to condemn be denied, . . . for in those circumstances the taking may not be for a 'public' use at all") (citing *United States v. 2,606.84 Acres of Land in Tarrant Cnty., Tex.*, 432 F.2d 1286, 1287 (5th Cir. 1970); *Rott v. City of Miami Beach*, 94 So. 2d 168, 173 (Fla. 1957) ("It requires strong and convincing evidence of the most conclusive character to upset the findings of the elected officials charged with the responsibility of operating the city government in matters of this kind").

4-    **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

### (b)     Arbitrary and Capricious

Under *Chapman*, a licensee's determination of necessity under the Federal Power act is "arbitrary and capricious" only if it "was without adequate determining principle or was unreasoned." *Chapman v. Pub. Util. Dist. No. 1 of Douglas Cnty.*, 367 F.2d 163, 168 (9th Cir. 1966) (citing *United States v. Carmack*, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946)). The *Chapman* court additionally cited local state law (Washington) for the proposition that "arbitrary and capricious conduct" is "willful and unreasoning action, without consideration and regard for facts or circumstances" and that "[a]ction, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even though there be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached." *Id.* (citing *City of Tacoma v. Welcker*, 65 Wash. 2d 677, 684, 399 P.2d 330, 335 (1965)).

Oregon law[5] provides a similarly deferential view of "arbitrary and capricious." As noted in *Bradley v. State, ex rel. Dept. of Forestry*, 324 P.3d 504, 515 (Or. App. 2014), "the 'arbitrary and capricious' standard is highly deferential to agency action." As that court further noted:

> The terms 'arbitrary and capricious action,' when used in a matter like the instant one, must mean willful and unreasoning action, without consideration and in disregard of the facts and circumstances of the case. On the other hand, where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion had been reached.

*Id.* (citing *Jehovah's Witnesses v. Mullen et al*, 214 Or. 281, 296, 330 P.2d 5 (1958), *cert. den.*, 359 U.S. 436, 79 S.Ct. 940, 3 L.Ed.2d 932 (1959). *See also Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 978 (9th Cir. 2023) (for a respondent to survive review, it must "examine the

---

[5] Given the Federal Power Act's deference to state procedural law, *see supra* n.3, Oregon's definition of "arbitrary and capricious" may apply over any federal standard. *Cf. Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Regardless, whether measured by state or federal law, PGE's decision-making in this matter was neither arbitrary nor capricious.

5-     **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made."). "A 'satisfactory explanation' need not be the best possible explanation," such that the respondent's action must be upheld "so long as it is 'reasonable and reasonably explained.'" *Id.*

In cases under the federal APA, the party challenging an administrative action generally carries the burden of proof. *See, e.g., Sierra Club v. Morton*, 510 F.2d 813, 818 (5th Cir. 1975) (the burden is upon the plaintiffs to establish by a preponderance of the evidence that the decision to proceed was arbitrary and capricious); *Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021) (protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision; the protester must identify "hard facts" with "mere inference or suspicion" being).

Still, in condemnation cases, the deference due the condemning authority is such that the burden of proving arbitrary and capricious decision-making is regularly stated in heightened terms. *See, e.g., U.S., Dep't of Interior v. 16.03 Acres of Land, More or Less, Located in Rutland Cnty., Vt.*, 26 F.3d 349, 356 (2d Cir. 1994) ("a reviewing court may only set aside a takings decision as being arbitrary, capricious, or undertaken in bad faith in those instances where the court finds the Secretary's conduct so egregious that the taking at issue can serve no public use"); *Swartz v. Pittsburgh Pub. Parking Auth.*, 63 Pa. Cmwlth. 434, 439, 439 A.2d 1254, 1256 (1981) (describing the "heavy burden" of proving fraud or arbitrary and capricious decision-making in a condemnation action); *City of Fairbanks v. Metro Co.*, 540 P.2d 1056, 1058 (Alaska 1975) (holding that condemnation decisions are left to the "sound discretion of the condemning authority absent a showing by clear and convincing evidence that such determinations are the product of fraud, caprice, or arbitrariness").

## B.    PGE is required by federal law to control in perpetuity all property necessary for its hydroelectric operations.

"Standard license article 5 requires licensees to retain title in fee to, or the right to use in

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

perpetuity, project property sufficient to accomplish all project purposes."[6] *City of Holyoke Gas & Elec. Dep't*, 115 FERC ¶ 62,295, at p. 64,299-208 to -209 (2006). "This reflects the requirement that the licensee have sufficient control over project lands and works to enable the Commission, through the licensee, to carry out its regulatory responsibilities with respect to the project." *Id.* "The necessary property rights must be held in perpetuity so that the licensee reserves adequate rights in project property not only for the current license, but also for future licenses and for the U.S. to operate and maintain the project under the relicensing and government take-over provisions of FPA section 14 and relicensing provisions of section 15." *Id.*; *see also Appomattox River Water Auth.*, 60 FERC ¶ 61,083, at p. 61,266 (1992) ("Under license article 5 licensees must preserve adequate rights in project property not only for themselves but also for future licensees and the United States to operate and maintain the project under the relicensing and government take-over provisions of sections 14 and 15 of the FPA."); *Boott Mills*, 25 FERC ¶ 61,386, at p. 61,849 (1983) ("Our obligations under the Federal Power Act . . . require that we ensure that a project licensee hold and control all real property interests necessary for project purposes.").

**C.    PGE may condemn property outside of its FERC project boundary.**

During trial, the Court expressed some questions about whether it has authority to authorize PGE to condemn property outside the FERC project boundary. But the Court need not linger long on this issue. At summary judgment, the Court found two cases from the Seventh and Eighth Circuits persuasive regarding a FERC licensee's ability to exercise eminent domain over land outside the project boundary. *See* Opinion and Order, ECF No. 19 at 9-10 (citing *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459 (7th Cir. 2008), and *Feltz v. Central Nebraska Public Power & Irrigation District*, 124 F.2d 578 (8th Cir. 1942)). These courts pointed out that the Federal Power Act's text does not limit the right of eminent domain to areas within a project's boundary. And the seminal Ninth Circuit condemnation case

---

[6] PGE's FERC license contains standard Article 5. *See* **TX 11** at 152 of 158.

7-    **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Chapman v. Public Utility District No. 1 of Douglas County Washington* involved an area outside the project boundary, specifically acreage above the maximum depth of the "project pool" or "adjacent to the reservoir rim." 367 F.2d 163, 165, 168 (9th Cir. 1966). That this area fell outside the project boundary did not matter to the relevant question of whether the land was "reasonably necessary" to the purposes of the project. *Id.* at 168; *see State of La., Through Sabine River Auth. v. Lindsey*, 524 F.2d 934, 937 (5th Cir. 1975) ("While *Chapman* dealt primarily with the issue of the necessity of taking a fee as opposed to an easement, the fact remains that it was a suit to condemn lands outside of the dam site and reservoir which was maintained in a federal forum by virtue of § 814.").

Further, other courts that have addressed the scope of the Federal Power Act's eminent domain provision in 16 U.S.C. § 814 have interpreted the statute broadly. The Fifth Circuit concluded that it had jurisdiction to decide a licensee's condemnation rights for any "area [that] can be considered a work appurtenant or accessory to a dam or reservoir." *Lindsey*, 524 F.2d at 939. In reaching this conclusion, the Fifth Circuit rejected "a narrow reading of § 814." *Id.* at 938. The Fourth Circuit similarly read § 814 expansively:

> The Federal Power Act came to fulfill, not to destroy. It is a remedial statute enacted by the Federal Congress to extend the rights of eminent domain in favor of licensees under the Act. And in statutes of this character, the great dictum of St. Paul: 'The letter killeth but the spirit giveth life,' seems peculiarly applicable.

*Oakland Club v. S.C. Pub. Serv. Auth.*, 110 F.2d 84, 86 (4th Cir. 1940). The Fourth Circuit therefore declined to place strict limits on the substantive condemnation rights of a licensee. *Id.* ("[W]e are satisfied that the Federal Power Act does not restrict the condemnor to the rights and powers of eminent domain specifically enumerated in the Federal Power Act."). Nothing in the case here suggests that this Court should take a different approach.

The broad interpretations of the Federal Power Act align with the guidance in the FERC Compliance Handbook (**TX 12**). The Compliance Handbook explains that "the project boundary is an administrative marker to clearly delineate those lands necessary for the operation and

8-    **PGE'S CLOSING BRIEF**

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

062187.0028\181437894.6

maintenance of the project and for other project boundaries." **TX 12** at 28. It is not a definitive delineation of land necessary for project purposes, for "[o]ccasionally, lands outside a project boundary must be used to serve a particular project need or to satisfy a particular license requirement." *Id.* at 29. In "most" but not all cases, "the licensee must apply for a change to the project boundary to add those lands to the project and bring the lands into the project boundary."[7] *Id.* The Compliance Handbook suggests that this Court's determination that land is necessary for project purposes would be conclusive in a future application to add the land to the project boundary: "[I]f it were determined that a project licensee had ongoing license responsibilities in connection with lands not currently within the project (e.g., facility operation and maintenance or resource management requirements), those lands would be brought into the project through approved changes to the project boundary." *Id.*

In administrative decisions, FERC has expanded on this guidance. It has noted that a licensee "may be required to obtain sufficient rights over those lands [outside the project boundary] to ensure that the Commission can exercise its regulatory authority, and may have to amend the project boundary to include those lands." *Appalachian Power Co.*, 108 FERC ¶ 61,262, 62,433 n.3 (2004). In other words, FERC may not have regulatory authority over land for which the licensee has not yet acquired rights but can require a licensee to obtain such rights. Therefore, the presumed order of operations is that a licensee first acquires the right to own or exercise control over land, and then FERC may amend the project boundary to include that land.[8] All this to say that the Court should have no doubt that it may allow PGE to exercise condemnation authority under the Federal Power Act over all land necessary to the project, whether the land currently is inside or outside the project boundary.

---

[7] Should PGE prevail in this matter, PGE intends to adjust the project boundary with FERC to include the Condemnation Property.

[8] This sequencing is also consistent with FERC's October 25, 2022 order dismissing PGE's request to approve the Perpetual Cultural Practices Easement. *See* **TX 49** at ¶ 13 ("PGE's application . . . should be dismissed, without prejudice, to allow PGE additional time to resolve disputes regarding land ownership . . . .").

9-     **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

D.      **PGE has a compliance obligation under its FERC license to protect public safety.**

PGE's FERC license (**TX 11**) includes ordering paragraph 109, which broadly incorporates into the license the provisions of the Federal Power Act.  *See* **TX 11** at ¶ 109 (p. 24 of 158) ("The license is subject to the terms and conditions of the Federal Power Act (FPA), which is incorporated by reference as part of this license, and subject to the regulations of the Commission issues under the provisions of the FPA").  Under section 10(c) of the Federal Power Act (16 U.S.C. § 803(c)), PGE is required to "maintain the project works in a condition of repair adequate for the purposes of navigation and for the efficient operation of said works in the development and transmission of power," and to "conform to such rules and regulations as [FERC] may from time to time prescribe for the protection of life, health, and property." FERC's governing regulations, in turn, require PGE to maintain public safety in connection with its hydroelectric project.  *See, e.g.*, 18 CFR Chapter 12 ("Safety of Water Projects and Project Works"); 18 CFR § 12.60 *et seq.* (requiring dam safety program); 18 CFR § 12.20 *et seq.* (requiring emergency action plan).[9]

FERC has broad authority to investigate and enforce violations of a FERC hydropower license.  Indeed, FERC conducts regular dam safety inspections (pursuant to 16 USC § 823b(a)), and as a result of these inspections, FERC can issue corrective orders to address safety issues (*see, e.g.*, 18 CFR § 12.4).  If the licensee fails to take corrective action, FERC can impose civil penalties of up to $28,000 per day per violation (*see* 16 USC § 823b(c), as amended per 2024-00425).[10] FERC can also order a project shutdown and revoke a license for non-compliance with a FERC License.  *See* 16 USC § 823b(c).

E.      **PGE has a compliance obligation under its FERC license to perform various other obligations within the Condemnation Property discussed at trial.**

As discussed at trial by PGE witnesses Kenny Gunn and Megan Hill, PGE has regulatory

---

[9] Additionally, the PGE FERC license contains standard "Article 4," which subjects the project "to the inspection and supervision of the Regional Engineer" and FERC generally.  *See* **TX 11** at 152 of 158.
[10] *See Civil Monetary Penalty Inflation Adjustments*, 89 FR 1806-01.

10-    **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax:  +1.503.727.2222

obligations to perform activities within the Condemnation Property.  For example:

- Ordering Paragraph (D) of PGE's FERC License adopted all conditions of the water quality certification issued by the Oregon Department of Environmental Quality ("ODEQ"). (**TX 11**, p. 26 of 158).  One such condition imposed by ODEQ, which FERC adopted into the License as required by section 401(d) of the Clean Water Act ("CWA") (33 U.S.C. § 1341(d)), requires PGE to "[i]mplement a Stranding Management Plan."  Similarly, Appendix C of the FERC license requires PGE to "salvage stranded Pacific lamprey in accordance with the St[r]anding Management Plan."  (**TX** p. 68 of 168, § 2(b), and at p. 113 of 158 at ¶ 2).

- Article 403 of the Project License required PGE to "conduct a preliminary assessment of use of lamprey ramps at the Falls." (**TX 11**, p. 34 of 158). Moreover, Ordering Paragraph (D) of its FERC license adopted all conditions of the water quality certification issued by ODEQ. One such condition imposed by ODEQ, which FERC adopted into the License as required by CWA section 401(d) (33 U.S.C. § 1341(d)), requires PGE to "[i]nstall and provide flows at lamprey passage ramps."  Finally, Ordering Paragraphs (E) and (F) of the FERC license adopted fish passage requirements imposed by the National Marine Fisheries Service (NMFS) and U.S. Fish and Wildlife Service (USFWS), which require PGE to use the Property to construct, operate, and maintain lamprey passage.

- Article 409 of the FERC license requires PGE to implement a Historic Properties Management Plan (HPMP) for cultural and historic properties that may be affected by the ongoing operation and maintenance of the project. (**TX 11**, p. 36 of 158).

11-   **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

**F.      The State cannot fulfill PGE's license obligations.**

At one point during the trial, the Court queried whether State ownership of land within the project boundary might absolve PGE of some of its regulatory obligations. Relatedly, the Court inquired whether the State may authorize a non-project use of project land and thus relieve PGE from any responsibility for that use. Not so.

As FERC has explained, "The Commission carries out its regulatory responsibilities with respect to licensed projects through its licensees, and cannot look to non-licensees for fulfillment of license requirements." *Appalachian Power Co.*, 108 FERC ¶ 61,262, 62,433 (2004) (footnotes omitted). If a licensee "lacks sufficient property interests in the dam and [the rest of the project] to ensure the project's operation as licensed, it must obtain those interests." *Marsh Valley Hydroelectric Co.*, 64 FERC ¶ 61,120, 61,953 (1993). Lack of "sufficient property interests" in the project area may mean that at the end of the license term, FERC cannot allow "federal takeover or of new license issuance to a different entity, as authorized by sections 14 and 15 of the [Federal Power Act], 16 U.S.C. §§807-08." *Id.* Therefore, State ownership of project land and authorization of a non-project use is no solution and expressly prohibited under the Federal Power Act. PGE remains responsible for fulfilling all license obligations within the project boundary, including acquiring sufficient ownership rights.

## CONCLUSION

Given the governing legal standards, and having now heard all of the evidence at trial, the Court should conclude that PGE is entitled to condemn the Condemnation Property. Accordingly, a judgment should issue in favor of PGE, and against DSL, adjudicating that PGE is the fee simple owner of the Condemnation Property. PGE will then be required to tender payment to DSL in the amount of $150,000 (the unrebutted fair market value) in connection with the recording of a deed resolving and conveying to PGE fee ownership of the Condemnation Property, consistent with the stipulations reached at trial.

//

//

12- **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

DATED:  May 2, 2025.

PERKINS COIE LLP

By:/s/ Erick J. Haynie_____
    **Erick J. Haynie**, OSB No. 982482
    EHaynie@perkinscoie.com
    **Christopher W. Rich**, OSB No. 990954
    CRich@perkinscoie.com
    **Megan K. Houlihan**, OSB No. 161273
    MHoulihan@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: +1.503.727.2000

*Attorneys for Plaintiff*

13-  **PGE'S CLOSING BRIEF**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222